Case No. 23-11682-J

# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

---

K. H.,
Appellant-Plaintiff,

v.

RITI, INC. D/B/A AMERICAN INN & SUITES,
Appellee-Defendant.

---

Appeal from the United States District Court
for the Northern District of Georgia

### **Appellant-Plaintiff K.H.'s Principal Brief**

Matthew B. Stoddard
Belle-Anne B. Cooper
THE STODDARD FIRM
1534 N Decatur Road
Atlanta, GA 30307

Naveen Ramachandrappa
BONDURANT MIXSON & ELMORE LLP
1201 W Peachtree St NW Ste 3900
Atlanta, GA 30309

*Attorneys for Appellant-Plaintiff K.H.*

## Certificate Of Interested Persons And Corporate Disclosure Statement

In accordance with Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rules 26.1-1 through 26.1-3, counsel for Appellant-Plaintiff K.H.[1] certifies that the following list is a complete list of all trial judges, attorneys, persons, associations of persons, firms, partnerships, or corporations (including subsidiaries, conglomerates, affiliates, parent corporations, any publicly held corporation that owns 10% or more of the party's stock, and other identifiable legal entities related to a party) that have an interest in the outcome of this particular case or appeal:

- Auto Owners Insurance Company (Insurance Carrier for Appellee-Defendant Riti, Inc.)

- Cohen, Mark H., Hon. (District Court Judge, N.D. Ga.)

- Cooper, Belle-Anne B. (Counsel for Appellant-Plaintiff K.H.)

- Bondurant, Mixson & Elmore LLP (Law Firm of Record for Appellant-Plaintiff K.H.)

- Gilmore, Tracy A. (Counsel for Appellee-Defendant Riti, Inc.)

- Harris, Roger E. (Counsel for Appellee-Defendant Riti, Inc.)

- K.H. (Appellant-Plaintiff)

---

[1] Pursuant to the district court's order, "[t]he parties are **DIRECTED** to use the initials K.H., in reference to Plaintiff in any public filing." R-14 at 5.

- Merrill, Marrisa H. (Counsel for Appellee-Defendant Riti, Inc.)

- Patel, Devangini (Sole Shareholder of Appellee-Defendant Riti, Inc.)

- Ramachandrappa, Naveen (Counsel for Appellant-Plaintiff K.H.)

- Riti, Inc. d/b/a American Inn & Suites (Appellee-Defendant)

- Stoddard, Matthew B. (Counsel for Appellant-Plaintiff K.H.)

- The Stoddard Firm (Law Firm of Record for Appellant-Plaintiff K.H.)

Counsel for Appellant-Plaintiff K.H. further certifies that no publicly traded company or corporation has an interest in the outcome of this case or appeal.

**Statement Regarding Oral Argument**

This appeal arises from a civil action filed by Appellant-Plaintiff K.H. against Appellee-Defendant Riti, Inc. *See* R-1 (Compl.).[2] As alleged in her complaint, in 2011, K.H. was sixteen years old, was a ward of the state, and had recently run away from a group home. *Id.* (¶ 16) at 5. While homeless, K.H. met Darrell Laye, who promised to help K.H. *Id.* (¶ 17). Instead, Laye took K.H. to the American Inn & Suites in Jonesboro, Georgia. *Id.* (¶ 20). The American Inn & Suites is a budget motel owned and operated by Riti and a well-known hotspot for sex trafficking ventures. *Id.* (¶¶ 2, 4) at 3.

By threats and violence, Laye then forced K.H. to work as a prostitute. *Id.* (¶¶ 19, 26-29, 40) at 5-6, 10-11. From 2011 through 2015, hundreds of men sexually assaulted K.H. at Riti's motel, including in 2011 and most of 2012 when K.H. was less than eighteen years old. *Id.* (¶¶ 20, 23) at 5-6.

As a sex-trafficking victim, K.H. asserts a single claim against Riti under the Trafficking Victims Protection Reauthorization Act (TVPRA), which authorizes victims to pursue a civil remedy against beneficiaries of sex-trafficking ventures. *Id.* (¶¶ 33-68) at 7-21; *see* 18 U.S.C. § 1595 (a). K.H. and Riti should have

---

[2] Pursuant to Eleventh Circuit Rule 28-5, K.H. states that the record cites in this brief, and any other briefs she may file, generally use the following format: R-[district court docket number] (abbreviated document name, when first cited or if otherwise useful) at [page number(s) in the header generated by the district court's electronic filing system, if page numbers are useful].

proceeded to discovery and a jury trial in this action.

But, based on a legal test that conflicts with this Court's precedent and the TVPRA's plain language, and while disregarding K.H.'s factual allegations, the district court dismissed K.H.'s claim. *See* R-31 (Dismissal Order). Specifically, the district court held that "K.H. has not sufficiently alleged facts to support the second element [the participation element] of her TVPRA [] claim." *Id.* at 12 n.3. The district court also essentially held that K.H. has not sufficiently alleged the fourth element, the knowledge element of her TVPRA claim. *See id.*

K.H. now appeals, and for at least three reasons, this Court should hear oral argument from the parties before deciding this appeal.

*First*, this appeal presents an undecided question of first impression for this Court. It appears that the Court has not yet issued any published opinion deciding any TVPRA claim against a motel operator, let alone an opinion on how to apply the participation element to a motel operator. While this Court did explain in *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714 (11th Cir. 2021), that "renting a room to the abuser" is one of the "kinds of allegations [that] would establish a hotel operator's participation in a venture with a sex trafficker," *id.* at 726, that statement is *dictum*. *See also id.* at 729 (Jordan, J., concurring). It is *dictum* because, in *Red Roof*, this Court decided only the Does' claims against the franchisors. It did not decide the Does' claims against the operators, which remain pending in the district court.

As the Court knows well, *dicta* is not binding precedent, and the district court apparently did not find this Court's *dicta* persuasive. Despite recognizing that "K.H. asserts that she has met the second element of the participation prong of the TVPRA because she alleges that Riti had prior and continuous commercial dealings with the sex trafficker through the renting of [sic] room for one night at a time," R-31 at 7, the district court nonetheless held that K.H. had not met the participation element—in clear conflict with *Red Roof*.

Given that this appeal presents an undecided question of first impression and the district court's answer conflicts with this Court's *dicta*, the Court should hear oral argument to ensure that it understands the parties' arguments and can draft an opinion that gives clear and accurate guidance to judges and litigants. *Cf. Rose v. Hodges*, 423 U.S. 19, 26 (1975) (Brennan, J., dissenting) ("[T]he issue is one of first impression in this Court, and it surely merits briefing and oral argument.").

*Second*, not only does the district court's answer to a question of first impression conflict with this Court's *dicta*, but the district court's legal test for participation also conflicts with this Court's holding in *Red Roof*.

In *Red Roof*, this Court held and emphasized that, "[i]nstead of incorporating Section 1591(e)(4)'s idiosyncratic definition of 'participation in a venture,' we interpret that phrase in Section 1595(a) according to **its plain meaning**." 21 F.4th at 724 (emphasis added); *see id.* at 725 ("In defining these elements according to

their plain meaning, we depart from some courts and agree with others."). "The ordinary meaning of participate or participation is to take part in or share with others in common or in an association." *Id.* Thus, this Court held that "the phrase 'participation in a venture'" requires an allegation that the defendant "took part in a common undertaking or enterprise involving risk and potential profit." *Id.*

Yet, instead of applying this Court's holding in *Red Roof* and asking whether Riti "took part" in a sex-trafficking venture, the district court applied an entirely different test—one that other judges in this Circuit have adopted as well:

> As stated recently by another judge in the district, there are **two ways** in which a plaintiff can 'connect the dots' between the plaintiff's experience as a victim of sex trafficking and the specific defendant in the lawsuit for purposes of pleading the second prong of a TVPRA claim: by alleging a **"direct association"** between the defendant hotel and the plaintiff's trafficker, or by showing a **"continuous business relationship"** between a defendant hotel and a sex trafficker where the defendant "rented rooms to people it knew or should have known were engaged in sex trafficking."

R-31 at 8-9 (emphasis added) (*J.G. v. Northbrook Indus., Inc.*, 619 F. Supp. 3d 1228, 1235 (N.D. Ga. 2022) (quoting out-of-circuit district court cases)).

Given that multiple district court judges in this Circuit have adopted a participation test that is found nowhere in *Red Roof* or the TVPRA, this Court should hear oral argument before deciding whether to endorse or reject this new test—particularly *Red Roof* emphasizes a plain-meaning interpretation.

*Third*, and more generally, it appears that *Red Roof* is the *only* published

opinion this Court has issued deciding any TVPRA claim against a beneficiary of sex trafficking. Meanwhile, there are *many* TVPRA actions filed in the last three years, and likely more to be filed, against beneficiaries. The district court's order in this action alone cites to *eight* other actions filed in the Northern District of Georgia against motel operators. *See* R-31 at 9-11 (citing *J.G. v. Northbrook Indus., Inc.*, No. 1:20-CV-05233-SEG (N.D. Ga.); *J.C. v. Riti, Inc.*, No. 1:22-CV-00848-MHC (N.D. Ga.); *J.C. v. Yash Luv*, No. 1:22-CV-00846-SEG (N.D. Ga.); *J.C. v. I Shri Khodiyar*, No. 1:22-CV-00844-SEG (N.D. Ga.); *A.G. v. Northbrook Indus., Inc.*, No. 1:20-CV-05231-JPB (N.D. Ga.); *G.W. v. Northbrook Indus., Inc.*, No. 1:20-CV-05232-JPB (N.D. Ga.); *Jane Doe I v. Red Roof Inns, Inc.*, No. 1:19-CV-3840-WMR (N.D. Ga.); *Heidemann v. Red Lions Hotels Corp.*, No. 1:20-CV-04001-LMM (N.D. Ga.)). And that is not even the full list in the Northern District of Georgia—let alone other districts in this Circuit and other circuits.

Given the sheer quantity of recent actions involving TVPRA claims against beneficiaries, judges and litigants need more guidance from this Court. Oral argument can help ensure that the Court provides clear and accurate guidance. *Cf. Baldwin Cty. Welcome Ctr. v. Brown*, 466 U.S. 147, 152 (1984) (Stevens, J., dissenting) ("Whenever this Court acts summarily, there is an increased risk that it will make a mistake. Without the benefit of full briefs and oral argument, an important issue may escape our attention.").

# Table Of Contents

Certificate Of Interested Persons And Corporate Disclosure Statement ..............C-1

Statement Regarding Oral Argument ....................................................... i

Table Of Citations ............................................................................. viii

Statement Of Jurisdiction ..................................................................... xi

Statement Of Issues ............................................................................. 1

Statement Of Case ............................................................................... 2

    1.    Statement Of Prior Proceedings ............................................. 2

    2.    Statement Of Facts ............................................................. 3

    3.    Statement Of Standard Of Review ......................................... 9

Summary Of Argument ....................................................................... 10

Argument And Citations Of Authority ................................................... 10

    1.    K.H. properly pled that Riti participated in a venture with Laye. ...... 12

        A.    Under *Red Roof*, the phrase "participation in a venture" must be given its plain meaning ................................. 12

        B.    By alleging that Riti directly rented rooms, night after night for four years, to Laye, K.H. satisfied *Red Roof's* plain-meaning interpretation of participation. ......................... 13

        C.    The two-way participation test applied by the district court violates *Red Roof* and the TVPRA's plain language. ...... 16

        D.    In any event, K.H. also satisfied the district court's two-way participation test. ............................................. 22

2.    K.H. properly pled that Riti knew or should have known that the venture with Laye violated the TVPRA as to K.H.........................24

    A.    Under *Red Roof*, the phrase "knew or should have known" must be given its plain meaning...................................24

    B.    By alleging that Riti observed K.H. exhibiting at least fourteen signs of sex trafficking, K.H. properly pled Riti's actual or constructive knowledge....................................25

    C.    The district court simply misread K.H.'s factual allegations of Riti's knowledge. ...............................................28

Conclusion ..............................................................................................31

# Table Of Citations

**Cases From The United States Supreme Court**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).......................................................................9

*Baldwin Cty. Welcome Ctr. v. Brown*,
  466 U.S. 147 (1984).......................................................................v

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007).......................................................................9

*Rose v. Hodges*,
  423 U.S. 19 (1975)....................................................................... iii

**Cases From The Eleventh Circuit Court of Appeals**

*Aldana v. Del Monte Fresh Produce, N.A., Inc.*,
  416 F.3d 1242 (11th Cir. 2005)..............................................9, 10

*Doe #1 v. Red Roof Inns, Inc.*,
  21 F.4th 714 (11th Cir. 2021)............................................ *passim*

*Speaker v. U.S. Dep't of Health & Human Servs.*,
  623 F.3d 1371 (11th Cir. 2010)............................................10, 30

**Cases From Other Federal Circuit Courts Of Appeals**

*Ricchio v. McLean*,
  853 F.3d 553 (1st Cir. 2017)..................................................14, 15

*Williams v. Gerber Prods. Co.*,
  552 F.3d 934 (9th Cir. 2008) .......................................................9

**Cases From Federal District Courts**

*A.G. v. Northbrook Indus., Inc.*,
  No. 1:20-CV-05231-JPB (N.D. Ga.) ............................................v

*G.W. v. Northbrook Indus., Inc.*,
No. 1:20-CV-05232-JPB (N.D. Ga.) ............................................................v

*Heidemann v. Red Lions Hotels Corp.*,
No. 1:20-CV-04001-LMM (N.D. Ga.) ........................................................v

*J.C. v. I Shri Khodiyar*,
No. 1:22-CV-00844-SEG (N.D. Ga.) ..........................................................v

*J.C. v. Riti, Inc.*,
No. 1:22-CV-00848-MHC (N.D. Ga.) .........................................................v

*J.C. v. Yash Luv*,
No. 1:22-CV-00846-SEG (N.D. Ga.) ..........................................................v

*J.G. v. Northbrook Indus., Inc.*,
619 F. Supp. 3d 1228 (N.D. Ga. 2022)................................................. iv, 17

*J.G. v. Northbrook Indus., Inc.*,
No. 1:20-CV-05233-SEG (N.D. Ga.) ..........................................................v

*Jane Doe I v. Red Roof Inns, Inc.*,
No. 1:19-CV-3840-WMR (N.D. Ga.) .........................................................v

*M.A. v. Wyndham Hotels & Resorts, Inc.*,
425 F. Supp. 3d 959 (S.D. Ohio 2019)..................................... 16, 23, 27, 28

*S.Y. v. Naples Hotel Co.*,
476 F. Supp. 3d 1251 (M.D. Fla. 2020) ...............................................16, 18

**Federal Statutes**

18 U.S.C. § 1595 (a) ........................................ xi, 1, 2, 11, 16, 18, 19, 23

28 U.S.C. § 1291 ........................................................................................ xi

28 U.S.C. § 1331 ........................................................................................ xi

**Federal Rules**

Fed. R. Civ. P. 8 (a)(2)...........................................................................9

**Other Sources**

ABA Journal, Jan. 17, 2023,
    https://www.abajournal.com/news/article/is_it_pleaded_or_pled .................1

## Statement Of Jurisdiction

This Court has subject-matter and appellate jurisdiction to decide Appellant-Plaintiff K.H.'s appeal from the district court's order granting Appellee-Defendant Riti, Inc.'s motion to dismiss and judgment in Riti's favor. *See* R-31; R-32.

The Court has subject-matter jurisdiction because K.H. asserts a claim against Riti under the Trafficking Victims Protection Reauthorization Act (TVPRA), a federal law. *See* R-1 (Compl. ¶¶ 33-68) at 7-21; 18 U.S.C. § 1595 (a). Thus, the Court has federal-question jurisdiction. *See* 28 U.S.C. § 1331.

The Court has appellate jurisdiction because the district court's order granting Riti's motion to dismiss and judgment in Riti's favor decided all claims by all parties. *See* R-31; R-32. The district court's order and judgment were entered on April 17, 2023, and K.H. filed her notice of appeal on May 16, 2023. *See* R-34. Thus, K.H. timely appealed, and this Court has appellate jurisdiction under the final-judgment doctrine. *See* 28 U.S.C. § 1291.

## Statement Of Issues

This appeal presents the following issues regarding whether Appellant-Plaintiff K.H. properly pled the second and fourth elements of a claim under the Trafficking Victims Protection Reauthorization Act (TVPRA), *see* 18 U.S.C. § 1595 (a), against Appellee-Defendant Riti, Inc., a motel operator:

(1)    By alleging that Riti directly rented rooms, night after night for four years, to the person who forcibly trafficked K.H. and other victims at Riti's motel for commercial sex acts, *see* R-1 (¶ 37) at 8-9, did K.H. properly plead that Riti took part in a common undertaking or enterprise involving risk or profit?

(2)    By alleging that Riti observed K.H. exhibiting at least fourteen signs and symptoms of sex trafficking—prominently labeled in K.H.'s complaint as "***The Signs and Symptoms of K.H.'s Trafficking***," R-1 (¶¶ 58-60) at 17-19 (emphasis in original)—did K.H. properly plead that Riti knew or should have known that the venture violated the TVPRA as to K.H.?

The answer to each question is yes. And because K.H. properly pled[3] the elements of a TVPRA claim against Riti, the Court should reverse the district court's order dismissing K.H.'s complaint and final judgment in Riti's favor.

---

[3] "'I know, I know: Bryan Garner says that 'pleaded' is the 'predominant form in American English,' [John] Chandler writes." ABA Journal, Jan. 17, 2023, https://www.abajournal.com/news/article/is_it_pleaded_or_pled. "'But does the guy listen to people talk? Nobody says 'pleaded.'" *Id.* "The shorter form [pled] is also favored by readers of Above the Law responding to online polls, he argues, as well as the characters on *Law & Order*." *Id.*

**<u>Statement Of Case</u>**

This appeal arises from a civil action filed by K.H. against Riti. *See* R-1. K.H. asserts a claim against Riti under the TVPRA, which authorizes victims to pursue a civil remedy against beneficiaries of sex trafficking ventures. *See id.* at 17; 18 U.S.C. § 1595 (a). K.H. and Riti should have proceeded to discovery and a jury trial. But, based on a legal test that conflicts with this Court's precedent and the TVPRA's plain language, and while disregarding K.H.'s fact allegations, the district court dismissed K.H.'s claims. *See* R-31 (Dismissal Order). The district court held that K.H. did not sufficiently allege the second element (participation) and the fourth element (knowledge) of her TVPRA claim. *Id.* at 12 n.3.

**1.     Statement Of Prior Proceedings**

On August 24, 2022, K.H. filed a complaint in the United States District Court for the Northern District of Georgia against Riti. *See* R-1. On the same day, K.H. filed a motion to allow her to proceed using her initials in public filings, while disclosing, confidentially, her full name to Riti. *See* R-2.

On October 14, 2022, Riti filed an answer and a motion to dismiss K.H.'s complaint for failure to state a claim on which relief can be granted. *See* R-9 (Ans.); R-13 (MTD); R-13-1 (MTD Br.).

On October 19, 2022, the district court granted K.H.'s motion to proceed using her initials and ordered that "[t]he parties are **DIRECTED** to use the initials

K.H., in reference to Plaintiff in any public filing." R-14 at 5.

On October 26, 2022, K.H. filed an opposition to Riti's motion to dismiss. *See* R-15. On November 9, 2022, Riti filed a reply in support of its motion to dismiss. *See* R-18. Under the local rules, the motion was then fully briefed and, without court order, would be decided without hearing. *See* N.D. Ga. Local Rules.

On April 17, 2023, the district court granted Riti's motion to dismiss. *See* R-31. Specifically, the district court held that "K.H. has not sufficiently alleged facts to support the second element of her TVPRA [] claim." *Id.* at 12 n.3. Though the district court claimed that "it need not discuss whether there are allegations sufficient to support the fourth element," *id.*, the district court then addressed that element as well. "K.H.'s Complaint fails to contain similar allegations to plausibly allege that Riti participated [sic] on a venture in which it knew or should have known that Laye engaged in sex trafficking of K.H." *Id.* at 12.

After granting Riti's motion to dismiss, and also on April 17, 2023, the district court entered final judgment in Riti's favor. *See* R-32.

On May 16, 2023, K.H. filed a notice of appeal from the district court's order granting Riti's motion to dismiss and judgment in Riti's favor. *See* R-34.

## 2.     Statement Of Facts[4]

In 2011, K.H. was sixteen years old, was a ward of the state, and had

---

[4] Everything that follows in this statement of facts comes from K.H.'s complaint and constitutes K.H.'s allegations at the time of dismissal.

recently run away from a group home. R-1 (¶ 16) at 5. While homeless and walking on Fulton Industrial Boulevard in Atlanta, Georgia, K.H. met Darrell Laye. *Id.* (¶ 17). Laye promised to help K.H. *Id.*

Instead, Laye took K.H. to Old Dixie Highway in Jonesboro, Georgia, where Laye explained that he was a pimp and K.H. was now his prostitute. *Id.* (¶ 18). Specifically, Laye took K.H. to the American Inn & Suites (formerly known as Americas Best Value Inn) located at 6385 Old Dixie Highway in Jonesboro, Georgia. *Id.* (¶¶ 19, 26-29, 40) at 5-6, 10-11. The American Inn & Suites is a budget motel owned and operated by Riti and a well-known hotspot for sex-trafficking ventures. *Id.* (¶¶ 2, 4) at 3.

By threats and violence, Laye then forced K.H. to work as a prostitute. *Id.* (¶¶ 19, 26-29, 40) at 5-6, 10-11. From 2011 through 2015, hundreds of men sexually assaulted K.H. at Riti's motel, including in 2011 and most of 2012 when K.H. was less than eighteen years old. *Id.* (¶¶ 20, 23) at 5-6. Buyers came to Riti's hotel, purchased the "right" to have sex with K.H. from Laye, and then the buyers raped K.H. in Riti's hotel. *Id.* (¶ 40.k.) at 11.[5]

The venture between Laye and Riti operated as follows. From 2011 through 2015, Laye trafficked K.H. "with multiple other [victims]" at "[Riti's] hotel for

---

[5] "Laye would sometimes transport K.H. to the hotel next door ... , but he would thereafter return her to the American Inn and Suites. K.H. noticed that the two hotels seemed to share employees." R-1 (Compl. ¶ 21) at 6.

multiple months at a time." *Id.* (¶ 3) at 3; *see id.* (¶ 31) at 7 ("Laye similarly exerted force, fraud, and coercion on other human beings – also forcing them to perform commercial sex acts at [Riti's] property over and over again."); *id.* (¶ 40.d.) at 10 ("Laye maintained K.H. and other women at [Riti's] hotel for the purpose of ... participating in commercial sex acts at the hotel[.]"). And "[Riti's] staff was familiar with [Laye][6] due to [Laye] staying at [Riti's] hotel to traffic girls on multiple occasions for multiple days." *Id.* (¶. 60) at 19.

Riti knowingly benefitted from the venture. "Laye rented rooms at [Riti's] property," "[Riti] collected revenue from the room rentals," and "K.H. was forced to have sex in those rooms." *Id.* (¶ 36) at 8.

Riti participated in the venture. Laye "would pay [Riti] in cash for one night at a time, booking the next night's stay before check-out time." *Id.* (¶ 37.a.). Despite the fact that Riti "knew or should have known" that "[Laye] w[as] engaged in sex trafficking including the trafficking of [K.H.]," Riti "continued to rent rooms to [Laye]." *Id.* (¶¶ 37.b., 37.e.) at 8-9; *see id.* (¶ 37.g.) at 9 ("After renting the room for the first night, [Laye] had prior commercial dealings with [Riti] and then reinstated those dealings."); *id.* (¶ 37.d.) ("[Riti] was directly renting rooms to the

---

[6] The complaint uses the words "Plaintiff's traffickers" in paragraph 60. But given that the complaint expressly identifies Laye as K.H.'s trafficker, Laye is interchangeable with the words "Plaintiff's traffickers." *See, e.g.*, R-1 (Compl. ¶ 40) at 10-11 ("Plaintiff's trafficker's undertaking with Defendant violated the TVPRA with respect to Plaintiff because: a. **Laye** recruited ... ; b. **Laye** harbored ... ; c. **Laye** transported ... ; [etc.].") (emphasis added).

same trafficker(s)—[Laye].").

The venture, by violence and threats, forced K.H. to engage in commercial sex acts. Among other things, "Laye withheld food, threatened K.H. with violence, struck K.H. multiple times, forced K.H. to take drugs, and used these tactics to cause K.H. to engage in commercial sex acts at [Riti's property]," including "when K.H. was a minor child." *Id.* (¶¶ 40.g., 40.h.) at 10-11.

And Riti knew or should have known that the venture involved trafficking K.H. for sex. "K.H.'s victimization followed a pattern that was readily observable and should have been obvious to [Riti's] hotel employees based on information available to the public at large and to the hotel industry." *Id.* (¶ 44) at 12. Specifically, "[r]egarding K.H., [Riti] and/or its employees observed" at least fourteen "***Signs and Symptoms of K.H.'s Trafficking***":

    a. persons who show signs of malnourishment, poor hygiene, fatigue, sleep deprivation, untreated illness, injuries, and/or unusual behavior;
    b. persons who lack freedom of movement or are constantly monitored;
    c. persons who have no control over or possession of money or ID;
    d. persons who dress inappropriately for their age or have lower quality clothing compared to others in their party;
    e. requests for room or housekeeping services (additional towels, new linens, etc.), but denial of hotel staff entry into the room;
    f. the presence of multiple computers, cell phones, pagers, credit card swipers, or other technology in the room;
    g. extended stay with few or no personal possessions in the room;
    h. excessive amounts of sex paraphernalia in rooms (condoms, lubricant, lotion, etc.);
    i. the same person reserves multiple rooms;
    j. a room is rented hourly, less than a day, or for an atypical extended

stay;

k. attempts to sell items to or beg from patrons or staff;

l. cars in the parking lot regularly parked backward, so the license plates are not visible;

m. loitering and solicitation of male patrons; and

n. persons asking staff or patrons for food or money.

*Id.* (¶ 58) at 17-18.[7]

Riti observed K.H. exhibiting every one of those fourteen signs and symptoms, which taken together constitute "the vast majority of the evidence that the Department of Homeland Security ('DHS') posts as guidelines to identify and prevent [] sex trafficking." *Id.*;[8] *see id.* (¶ 59) at 18-19 (similar allegations regarding End Child Prostitution and Trafficking guidelines). And "[R]iti's staff was familiar with [Laye] due to [Laye] staying at [Riti's] hotel to traffic girls on multiple occasions for multiple days." *Id.* (¶ 60) at 19.

Further supporting Riti's actual or constructive knowledge that the venture involved trafficking K.H. for sex is the fact that Riti received numerous reports of

---

[7] Given that paragraph 58 of the complaint begins with the words, "Regarding K.H., Defendant and/or its employees observed ... ," the words "persons" or "person" in the sub-paragraphs to paragraph 58 refer to *K.H.* R-1 (¶ 58) at 17-18. In other words, Riti observed *K.H.* "show signs of malnourishment," observed *K.H.* "lack freedom of movement," observed *K.H.* dress inappropriately for their age," and so on. That is also reinforced by the fact that the subheading just before paragraph 58 of the complaint is prominently labeled "***The Signs and Symptoms of K.H.'s Trafficking***." *Id.* at 17.

[8] In other words, Riti observed K.H. exhibit fourteen signs and symptoms of sex trafficking. There were other signs and symptoms from DHS guidelines that K.H. did not exhibit. But the fourteen signs that Riti observed K.H. exhibit constitute the vast majority of the signs and symptoms from DHS's guidelines.

sex trafficking and prostitution at its hotel. Riti "had actual knowledge of the publicly available online ... reviews of their establishments that reported prostitution, sex trafficking, and other illicit activities." *Id.* (¶ 52) at 15; *see id.* (¶ 53.a.) at 15-16 ("A 2012 review states: ... only bad complaint is **all of the [sic] hooker's running around this place**"); *id.* (¶ 53.c.) at 16 ("A 2015 review states: This place is nasty roach infested **drug and prostitution omg it's horrible**.").

Similarly, Riti "had actual or constructive knowledge of law enforcement activity reporting widespread prostitution, sex trafficking, and other illicit activities at [Riti's] [m]otel." *Id.* (¶ 55) at 16; *see id.* (¶ 57) at 17 ("In June 2015, police responded to the American Inn & Suites to investigate claims made by a ministry outreach program for sex trafficking victims that a minor was being trafficked for sex out of the hotel."); *id.* at 17 ("In September 2015, police responded to American Inn & Suites to investigate yet another claim related to multiple minors being sold for sex out of a hotel room rented by two adult men.").

Given that Riti knew of the widespread reports of sex trafficking and prostitution at its motel, the signs and symptoms of K.H.'s trafficking should have been even more compelling to Riti. That K.H. was being trafficked was not unusual; it was a common occurrence at Riti's motel.

Ultimately, as a result of the venture between Laye and Riti, K.H. was sexually assaulted by hundreds of men for four years, including when K.H. was a

minor child. *Id.* (Compl. ¶¶ 20, 23) at 5-6. K.H. faces a lifetime of physical and emotional trauma, and she filed this action to hold "[Riti] responsible for its role in making money off of K.H.'s human trafficking and to help prevent the trafficking of new victims by forcing [Riti] to change its conduct." *Id.* (Compl. ¶ 5) at 4.

### 3.    Statement Of Standard Of Review

"This Court 'review[s] an order granting a motion to dismiss ... *de novo*, applying the same standards the district court used.'" *Red Roof*, 21 F.4th at 723.

"As such, [the Court] must accept all factual allegations in the complaint as true and construe them 'in the light most favorable to the plaintiff.'" *Id.* Thus, "'[t]he motion [to dismiss] is not a procedure for resolving a contest between the parties about the facts or the substantive merits.'" *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008) (quoting 5 Fed. Prac. & Proc. § 1356). A court should not dismiss a complaint because it believes "the [claimant] will fail to find evidentiary support." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563 (2007). A claim need only be "plausible," and Rule 8 (a)(2) requires only "a short and plain statement." *Id.*; Fed. R. Civ. P. 8 (a)(2). Even "extravagantly fanciful" allegations are entitled to "the presumption of truth," and even if "it strikes a savvy judge that actual proof … is improbable," "a well-pleaded complaint may proceed." *Ashcroft v. Iqbal*, 556 U.S. 662, 696 (2009); *Twombly*, 550 U.S. at 556.

The Court must also "read the complaint as a whole." *Aldana v. Del Monte*

*Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1252 n.11 (11th Cir. 2005). Thus, "a formulaic misstep by counsel is not fatal," and a pleading is judged "by the quality of its substance rather than according to its form or label and, if possible, it will be construed to give effect to all its averments." *Id.*; *see Speaker v. U.S. Dep't of Health & Human Servs.*, 623 F.3d 1371, 1383 (11th Cir. 2010) ("[r]eading Speaker's Amended Complaint as a whole" and rejecting the CDC's arguments because it "reads the Amended Complaint far too narrowly").

## Summary Of Argument

The district court erred in finding that K.H. failed to properly plead the second and fourth elements of a TVPRA claim. *First*, by alleging that Riti directly rented rooms, night after night for four years, to the person who forcibly trafficked K.H. and other victims at Riti's motel, K.H. properly pled that Riti took part in a common undertaking or enterprise involving risk or profit. *Second*, by alleging that Riti observed K.H. exhibiting at least fourteen signs and symptoms of sex trafficking—prominently labeled in K.H.'s complaint as "***The Signs and Symptoms of K.H.'s Trafficking***"—K.H. properly pled that Riti knew or should have known that the venture violated the TVPRA as to K.H.

## Argument And Citations Of Authority

The civil remedy provision of the TVPRA provides that:

An individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (or whoever knowingly benefits,

or attempts or conspires to benefit, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) in an appropriate district court of the United States and may recover damages and reasonable attorneys fees.

18 U.S.C. § 1595 (a) (2023). A claim against a motel operator like Riti is not a claim against the perpetrator. Rather, it is a claim against "whoever knowingly benefits" from a venture and, thus, this type of claim is often called a "beneficiary" claim. *Red Roof*, 21 F.4th at 729 (Jordan, J., concurring) ("[O]ur opinion addresses the plaintiffs' TVPRA 'beneficiary' claims ....").

In *Red Roof*, this Court identified four elements that a plaintiff must plausibly allege to state a TVPRA claim against a beneficiary of sex trafficking:

> In short, we hold that, to state a beneficiary claim under Section 1595(a), a plaintiff must plausibly allege that the defendant (1) knowingly benefited, (2) from taking part in a common undertaking or enterprise involving risk and potential profit, (3) that undertaking or enterprise violated the TVPRA as to the plaintiff, and (4) the defendant had constructive or actual knowledge that the undertaking or enterprise violated the TVPRA as to the plaintiff.

*Id.* at 726. These four elements are based on the plain language of the TVPRA.

In this action, Riti challenged and the district court analyzed only the second and fourth elements—whether K.H. properly pled that Riti participated in a venture with K.H.'s trafficker, Laye, and whether K.H. properly pled that Riti knew or should have known that the venture with Laye violated the TVPRA as to K.H. Because K.H. properly pled both elements, this Court should reverse.

1.    **K.H. properly pled that Riti participated in a venture with Laye.**

   A.    **Under *Red Roof*, the phrase "participation in a venture" must be given its plain meaning.**

In *Red Roof*, "[m]ost of the parties' dispute concern[ed] the second element—to knowingly benefit *from participating in a venture*." *Id.* at 724. "The franchisors argue[d], and the district court held, that we should incorporate the definition of 'participation in a venture' from the criminal provisions in Section 1591." *Id.* But this Court explicitly rejected the franchisors' argument.

"Instead of incorporating Section 1591(e)(4)'s idiosyncratic definition of 'participation in a venture,' we interpret that phrase in Section 1595(a) according to its plain meaning." *Id.* "The ordinary meaning of 'venture' is an undertaking or enterprise involving risk and potential profit." *Id.* (citing Black's Law Dictionary (11th ed. 2019); Oxford English Dictionary 520 (2d ed. 1989)). "The ordinary meaning of participate or participation is to take part in or share with others in common or in an association." *Id.* at 724-25 (citing Black's Law Dictionary (11th ed. 2019); Oxford English Dictionary 268 (2d ed. 1989)).

"Accordingly, we conclude that the phrase 'participation in a venture' requires that [a plaintiff] allege that the [beneficiary] **took part in a common undertaking or enterprise involving risk and potential profit**." *Id.* (emphasis added). That emphasized language—took part in a common undertaking or enterprise involving risk and potential profit—is the clear and unequivocal holding

of *Red Roof* and *the* test for participation in this Circuit.

**B.    By alleging that Riti directly rented rooms, night after night for four years, to Laye, K.H. satisfied *Red Roof's* plain-meaning interpretation of participation.**

In this action, K.H. easily satisfies *Red Roof's* plain-meaning interpretation of participation. In her complaint, K.H. alleges that Riti directly rented rooms, night after night for four years, to Laye. More specifically, Riti took part in a common undertaking or enterprise involving risk and profit with Laye because:

a. [Laye] would pay in cash for one night at a time, booking the next night's stay before check-out time;
b. [Riti] directly rented rooms to [Laye, whom] it knew or should have known w[as] engaged in sex trafficking including the trafficking of [K.H.];
d. [Riti] was directly renting rooms to the same trafficker(s) – [K.H.];
e. [Riti] had commercial dealings with [Laye] and then continued to rent rooms to [Laye].
f. [Riti] had a continuous business relationship with [Laye] such that [Riti] established a pattern of conduct with [Laye].
g. After renting the room for the first night, [Laye] had prior commercial dealings with [Riti] and then reinstated those dealings.
h. [Riti] associated with [Laye] in an effort to force [K.H.] to serve [Riti's] business objectives.
i. [Riti] owned, operated, and maintained the [m]otel in question.

R-1 (¶ 37) at. 8-9.[9] Nothing more is needed to allege Riti's participation. Night after night, for four years, Riti *directly* provided Laye with the rooms—the literal

_____

[9] Again, although the complaint uses the words "Plaintiff's trafficker(s)" in paragraph 37, the complaint aksi expressly identifies Laye as K.H.'s trafficker. Thus, Laye is interchangeable with the words "Plaintiff's trafficker(s)." *See, e.g.*, R-1 (Compl. ¶ 40) at 10-11 ("Plaintiff's trafficker's undertaking with Defendant violated the TVPRA with respect to Plaintiff because: a. **Laye** recruited ... ; b. **Laye** harbored ... ; c. **Laye** transported ... ; [etc.].") (emphasis added).

space—in which K.H. was forced to have sex with men for money.

To be sure, in *Red Roof*, this Court held that the Does in that case had not plausibly alleged participation. But that is because the Does' claims decided on appeal were claims against the *franchisors*—not the hotel operators. *See, e.g.*, 21 F.4th at 727 ("[The Does] have provided no plausible allegations that the **franchisors** took part in the common undertaking of sex trafficking.") (emphasis added). The franchisors did not actually rent the rooms to the sex traffickers. They just received a percentage of revenue *from the franchisees*. The franchisors never interacted or otherwise assisted the traffickers themselves. *See, e.g.*, *id.* at 726-27 ("These allegations may suggest that the franchisors financially benefited from renting hotel rooms to the Does' sex traffickers. But they do nothing to show that the franchisors participated in a common undertaking ....").

By contrast, in this action, K.H. asserts a claim against Riti—the motel owner, operator, and manager that directly rented rooms to Laye. Without the motel rooms that Riti provided, Laye could not have trafficked K.H. for sex at the American Inn & Suites. Riti took part in the venture by directly renting the rooms.

Were there any doubt that a motel operator participates in a venture by directly renting rooms to a sex trafficker, *Red Roof* itself extinguishes that doubt. In *Red Roof*, this Court confirmed its agreement with a First Circuit case, *Ricchio v. McLean*, 853 F.3d 553 (1st Cir. 2017), that "renting a room to the abuser" is one

of the "kinds of allegations [that] would establish a hotel operator's participation in a venture with a sex trafficker." 21 F.4th at 725-26.

As this Court explained in full:

> As for our sister circuits, only the First Circuit has addressed a Section 1595(a) beneficiary claim. *See Ricchio v. McLean*, 853 F.3d 553, 556-58 (1st Cir. 2017). And we think our reasoning is consistent with the disposition there. In *Ricchio*, the plaintiff sued the owner and live-in operators of a hotel where she was held hostage and sexually abused. *Id.* at 556. The First Circuit held that the plaintiff had plausibly alleged that the operators' association with the plaintiff's sex trafficker was a "venture" because her abuser "had prior commercial dealings with the [operators], which the parties wished to reinstate for profit." *Id.* at 555. Considering these dealings, **the plaintiff also plausibly alleged that, by renting a room to the abuser, the operators were "associating with him in an effort to force [the plaintiff] to serve their business objective."** *Id.* **We agree that these kinds of allegations would establish a hotel operator's participation in a venture with a sex trafficker**.

*Id.* (emphasis added).

If this Court's majority opinion were somehow not clear enough, Judge Jordan's concurring opinion reinforced, once more, that "our opinion addresses the plaintiffs' TVPRA 'beneficiary' claims against franchisors which do not operate or manage the hotels at which sex trafficking allegedly occurred." *Id.* at 729. "But, as the court explains, similar claims against those who own, operate, or manage the hotels in question (e.g., franchisees) would withstand a Rule 12(b)(6) motion to dismiss." *Id.* at 729-30. "[T]he participation element of a 'beneficiary' claim ... does not require that the defendant in question have participated in the sex

trafficking act itself." *Id.* at 730. "'[P]articipation in a venture' requires only that a defendant take part in a common undertaking or enterprise ...." *Id.*

And other courts—including one cited with approval by Judge Jordan in *Red Roof*—have held that allegations of a motel operator directly renting rooms to a sex trafficker satisfy the participation element. *See, e.g.*, *M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F. Supp. 3d 959, 971 (S.D. Ohio 2019) ("This Court finds Plaintiff has alleged sufficient facts to show Defendants 'participated in a venture' under § 1595 by alleging that **Defendants rented rooms** to people it knew or should have known [were] engaged in sex trafficking. These acts and omissions by Defendants, M.A., alleges, facilitated the sex trafficking venture."); *S.Y. v. Naples Hotel Co.*, 476 F. Supp. 3d 1251, 1257 (M.D. Fla. 2020) (cited by Judge Jordan in *Red Roof*) (finding the participation element satisfied because the complaint alleges "**the rooms rented** for plaintiffs and their traffickers" and "food and beverage sales and ATM fees from those persons who were engag[ed] in sex trafficking") (emphasis added in both).

### C. The two-way participation test applied by the district court violates *Red Roof* and the TVPRA's plain language.

Remarkably, the district court's order in this action does not apply *Red Roof's* plain-meaning interpretation of participation and simply ask whether K.H. has alleged that Riti took part in the venture with Laye. Nor does the district court's order address or even mention *Red Roof's* statement that "renting a room to

the abuser" is one of the "kinds of allegations [that] would establish a hotel operator's participation in a venture with a sex trafficker." 21 F.4th at 725-26. Same with Judge Jordan's concurrence—the district court never mentions it.

Those omissions are remarkable because the district court recognized that "K.H. asserts that she has met the ... participation prong of the TVPRA because she alleges that Riti had prior and continuous commercial dealings with the sex trafficker through the renting of [sic] room for one night at a time." R-31 at 7. In other words, the district court understood that K.H. allges that Riti directly rented rooms to Laye, night after night for four years. And district court does not hold that, somehow, those fact allegations are not entitled to a presumption of truth.

Instead, the district court appears to have held that K.H.'s allegations of Riti's direct room-rentals are *legally* insufficient based on a two-way participation test that is found nowhere in *Red Roof* or the TVPRA. The district court held that:

> As stated recently by another judge in the district, there are **two ways** in which a plaintiff can 'connect the dots' between the plaintiff's experience as a victim of sex trafficking and the specific defendant in the lawsuit for purposes of pleading the second prong of a TVPRA claim: by alleging a **"direct association"** between the defendant hotel and the plaintiff's trafficker, or by showing a **"continuous business relationship"** between a defendant hotel and a sex trafficker where the defendant "rented rooms to people it knew or should have known were engaged in sex trafficking."

R-31 at 8-9 (emphasis added) (quoting *J.G. v. Northbrook Indus., Inc.*, 619 F. Supp. 3d 1228, 1235 (N.D. Ga. 2022) (quoting out-of-circuit district court cases)).

To be clear, and as K.H. will set forth in the next subsection, K.H. also satisfies this two-way participation test adopted by the district court. But, as an initial matter, this Court should reject and disapprove of the district court's two-way participation test as violating *Red Roof* and the TVPRA's plain language.

*First*, as applied by the district court, the term "direct association" appears to require that the motel operator participate in the sex-trafficking act itself. The types of factual allegations the district court identified as showing a direct association are allegations that the motel's employees "aided the trafficker by alerting him when foot traffic was too heavy," employees "acted as a lookout for the traffickers," and employees "bought sex with trafficking victims." R-31 at 10-11; *see id.* ("The cases ... in which courts in this district court denied motions to dismiss ... all contained allegations which supported a direct association between the defendant hotel and the sex trafficker which are missing in the Complaint in this case.").

But, as Judge Jordan explained in *Red Roof*, "the participation element of a 'beneficiary' claim under § 1595(a) **does not** require that the defendant in question have participated in the sex trafficking act itself." 21 F.4th at 730 (emphasis added); *see S.Y.*, 476 F. Supp. 3d at 1256 ("[T]he Court concludes that actual 'participation in the sex trafficking act itself' is not required to state a claim under section 1595. Accordingly, plaintiffs' failure to allege such actual participation is not fatal to its section 1595 claim under the TVPRA.").

As the TVPRA's plain language makes clear, the only requirement is that the beneficiary participate *in the venture*—not the trafficking itself. The TVPRA provides a claim against "whoever knowingly benefits ... from **participation in a venture**." 18 U.S.C. § 1595 (a) (emphasis added).

Moreover, the district court never defines or otherwise explains the meaning of the term "direct association"—let alone explain why acting as a lookout for traffickers constitutes a direct association, while directly renting rooms to a known trafficker does not constitute a direct association. That distinction makes no sense. Renting rooms to a known trafficker is just as much a direct association as acting as a lookout, and perhaps even more so. Without the rooms, there is no trafficking. *See, e.g.*, R-1 (Compl. ¶ 50) at 15 ("[Riti] knew or should have known that, without a venue, or crime scene, a sex trafficking venture ceases to exist.").

*Second*, as applied by the district court, the term "continuous business relationship" seemingly has nothing to do with participation. Instead, the district court improperly and confusingly conflated that term with the fourth element of a TVPRA claim, knowledge. The types of factual allegations the district court identified as showing a "continuous business relationship" are allegations that the motel's employees "observed the minor victim in common areas of the hotel wearing little clothing during regular school hours," "observed the plaintiff and other trafficking victims' inappropriate appearances, dozens of adult men went into

the plaintiff's hotel room, and condoms, drugs, and weapons were located in the plaintiff's hotel room," and "observed the condition of the plaintiffs room where the trafficking occurred and the frequency of the victims being trafficked." R-31 at 11-12; *see id.* at 12 ("K.H.'s complaint fails to contain similar allegations to plausibly allege that Riti participated [sic] on a venture ....").

But it makes no sense to say that a plaintiff must show a "continuous business relationship" and then ask whether the plaintiff has alleged that the motel's employees "**<u>observed</u>**" various signs of sex trafficking. *Id.* at 11 (emphasis added). What the motel's employees observed does not relate to a "continuous business relationship." Instead, it is a confusing and improper conflation of the fourth element, knowledge, with the second element, participation.

Moreover, the district court never defines or otherwise explains the meaning of the term "continuous business relationship." The district court also never explains how that term could be consistent with *Red Roof* or the TVPRA's plain language. As this Court held in *Red Roof*, "the phrase 'participation in a venture' requires that [a plaintiff] allege that the [beneficiary] took part in a common undertaking or enterprise involving risk and potential profit." 21 F.4th at 724-25. Nothing in that plain-meaning interpretation requires a plaintiff to show a *continuous* business relationship, rather than just *a* business relationship.

Consider a hypothetical that illustrates the problem with requiring a

"continuous business relationship." Imagine that Laye had walked up to the front desk of Riti's hotel and said "I would like to rent a room, where I will force K.H. to have sex with men who will pay me for the 'right' to do so." In response, Riti said, "great, you can rent Room 101," and Laye then paid Riti for the room.

Under *Red Roof* and the TVPRA's plain language, this hypothetical would sufficiently allege that Riti has participated in a venture with Laye. By directly renting a room to a sex trafficker, Riti took part in a common undertaking or enterprise involving risk and potential profit.

But, under the district court's "continuous business relationship" test, it is unclear whether this hypothetical would sufficiently allege that Riti has participated in a venture with Laye. Would this one-time transaction be sufficient to show a *continuous* business relationship? If the answer is yes, then what purpose does the word continuous serve? If the answer is no, then how many transactions must occur before it becomes a continuous business relationship? And, most important, where does the TVPRA require a *continuous* business relationship, rather than just simply *a* business relationship?

The answers to these questions are nowhere to be found in the district court's order, and that is because the district court's test violates *Red Roof* and the TVPRA's plain language. To prevent confusion and uncertainty regarding the participation element for TVPRA claims against beneficiaries, this Court should

reject and disapprove of the district court's participation test. The Court should re-affirm *Red Roof's* plain-meaning interpretation of participation.

**D.    In any event, K.H. also satisfied the district court's two-way participation test.**

Not only is the district court's two-way participation test legally incorrect, the district court also incorrectly applied it to the facts here. In her complaint, K.H. properly alleged facts that also satisfy the district court's participation test.

*First*, K.H. alleges that Riti directly associated with Laye. Among other things, K.H. alleges that "[Laye] would pay in cash for one night at a time, booking the next night's stay before check-out time," "[Riti] directly rented rooms to [Laye, whom] it knew or should have known w[as] engaged in sex trafficking including the trafficking of [K.H.]," and "[a]fter renting the room for the first night, [Laye] had prior commercial dealings with [Riti] and then reinstated those dealings." R-1 (¶ 37) at. 8-9. Nothing more is needed to show Riti's direct association with Laye.

True, the cases cited by the district court involve types of direct association by motel operators—employees acting as a lookout or buying sex with the victims—not alleged by K.H. in this action. *See* R-31 at 10-11. But none of those cases hold that those are the *only* ways to show a direct association. And, again, renting rooms to a known trafficker is just as much a direct association as acting as a lookout, and perhaps even more so. Without the rooms, there is no trafficking. *See, e.g.*, R-1 (Compl. ¶ 50) at 15 ("[Riti] knew or should have known that, without

a venue, or crime scene, a sex trafficking venture ceases to exist.").

*Second*, K.H. alleges that Riti had a continuous business relationship with Laye. Again, K.H. alleges that, *for four years*, from 2011 through 2015, "[Laye] would pay in cash for one night at a time, booking the next night's stay before check-out time," "[Riti] directly rented rooms to [Laye, whom] it knew or should have known w[as] engaged in sex trafficking including the trafficking of [K.H.]," and "[a]fter renting the room for the first night, [Laye] had prior commercial dealings with [Riti] and then reinstated those dealings." R-1 (¶ 37) at. 8-9. Nothing more is needed to show that Riti had a continuous business relationship with Laye.

Indeed, other district courts applying this two-way participation test have held that allegations of repeated room-rentals to sex traffickers *does* show a continuous business relationship. *See, e.g.*, *M.A.*, 425 F. Supp. 3d at 970-71 (where "M.A. alleges that the hotels **repeatedly rented rooms** and thereby 'participated in the trafficking," "[t]his Court finds Plaintiff has alleged sufficient facts to show that Defendants 'participated in a venture' under § 1595 by alleging that Defendants **rented rooms** to people it knew or should have known [were] engaged in sex trafficking") (emphasis added)

In its order, the district court in this action did not address cases like *M.A.* Nor did the district court cite a *single* case that holds that allegations of repeated room-rentals do not suffice to show a continuous business relationship. Instead, the

district court held that K.H. failed to allege a continuous business relationship by finding that K.H. failed to plausibly allege that Riti "knew or should have known that Laye engaged in sex trafficking of K.H." R-31 at 12.

But, again, in reaching that finding, the district court did not actually decide whether K.H. had alleged a continuous business relationship. Instead, the district court confusingly and improperly conflated the fourth element, knowledge, with the second element, participation. This Court should reject such conflation, especially when, as K.H. will set forth in the next subsection, she has properly pled that Riti had actual or constructive knowledge.

## 2. K.H. properly pled that Riti knew or should have known that the venture with Laye violated the TVPRA as to K.H.

### A. Under *Red Roof*, the phrase "knew or should have known" must be given its plain meaning.

In *Red Roof*, this Court held that the fourth element of a TVPRA claim against a beneficiary requires that "the defendant must have either actual or constructive knowledge that the venture ... violated the TVPRA as to the plaintiff." 21 F.4th at 725. The Court then gave those words their plain meaning. "Knowledge requires '[a]n awareness or understanding of a fact or circumstance.'" *Id.* (quoting Black's Law Dictionary (11th ed. 2019)). "Constructive knowledge, on the other hand, is the knowledge which 'one using reasonable care or diligence should have.'" *Id.* (quoting Black's Law Dictionary (11th ed. 2019)).

Thus, a motel operator "may be liable under the TVPRA if they have either actual or constructive knowledge that the venture in which they participated and from which they benefited violated the TVPRA" as to the plaintiff. *Id.*

**B.    By alleging that Riti observed K.H. exhibiting at least fourteen signs of sex trafficking, K.H. properly pled Riti's actual or constructive knowledge.**

In this action, K.H. easily satisfies *Red Roof's* plain-meaning interpretation of actual or constructive knowledge. In her complaint, K.H. alleges that "[her] victimization followed a pattern that was readily observable and should have been obvious to [Riti's] hotel employees based on information available to the public at large and to the hotel industry." R-1 (¶ 44) at 12.

Specifically, "[r]egarding K.H., [Riti] and/or its employees observed" at least fourteen "*Signs and Symptoms of K.H.'s Trafficking*":

> a. persons who show signs of malnourishment, poor hygiene, fatigue, sleep deprivation, untreated illness, injuries, and/or unusual behavior;
> b. persons who lack freedom of movement or are constantly monitored;
> c. persons who have no control over or possession of money or ID;
> d. persons who dress inappropriately for their age or have lower quality clothing compared to others in their party;
> e. requests for room or housekeeping services (additional towels, new linens, etc.), but denial of hotel staff entry into the room;
> f. the presence of multiple computers, cell phones, pagers, credit card swipers, or other technology in the room;
> g. extended stay with few or no personal possessions in the room;
> h. excessive amounts of sex paraphernalia in rooms (condoms, lubricant, lotion, etc.);
> i. the same person reserves multiple rooms;
> j. a room is rented hourly, less than a day, or for an atypical extended

stay;
k. attempts to sell items to or beg from patrons or staff;
l. cars in the parking lot regularly parked backward, so the license plates are not visible;
m. loitering and solicitation of male patrons; and
n. persons asking staff or patrons for food or money.

*Id.* (¶ 58) at 17-18.[10]

Riti observed K.H. exhibiting every one of those fourteen signs and symptoms, which taken together constitute "the vast majority of the evidence that the Department of Homeland Security ('DHS') posts as guidelines to identify and prevent [] sex trafficking." *Id.*;[11] *see id.* (¶ 59) at 18-19 (similar allegations regarding End Child Prostitution and Trafficking guidelines). And "[R]iti's staff was familiar with [Laye] due to [Laye] staying at [Riti's] hotel to traffic girls on multiple occasions for multiple days." *Id.* (¶ 60) at 19.

Further supporting Riti's actual or constructive knowledge that the venture involved trafficking K.H. for sex is K.H.'s allegation that Riti received numerous

---

[10] Given that paragraph 58 of the complaint begins with the words, "Regarding K.H., Defendant and/or its employees observed ... ," the words "persons" or "person" in the sub-paragraphs to paragraph 58 refer to K.H. R-1 (¶ 58) at 17-18. Riti observed *K.H.* "show signs of malnourishment," observed *K.H.* "lack freedom of movement," observed *K.H.* dress inappropriately for their age," and so on. That is also reinforced by the fact that the subheading just before paragraph 58 of the complaint is prominently labeled "***The Signs and Symptoms of K.H.'s Trafficking***." *Id.* at 17.

[11] In other words, Riti observed K.H. exhibit fourteen signs and symptoms of sex trafficking. There were other signs and symptoms from DHS guidelines that K.H. did not exhibit. But the fourteen signs that Riti observed K.H. exhibit constitute the vast majority of the signs and symptoms from DHS's guidelines.

reports of sex trafficking and prostitution at its hotel. Riti "had actual knowledge of the publicly available online ... reviews of their establishments that reported prostitution, sex trafficking, and other illicit activities." *Id.* (¶ 52) at 15; *see id.* (¶ 53.a.) at 15-16 ("A 2012 review states: ... only bad complaint is **all of the [sic] hooker's running around this place**"); *id.* ("A 2015 review states: This place is nasty roach infested **drug and prostitution omg it's horrible**.").

Similarly, Riti "had actual or constructive knowledge of law enforcement activity reporting widespread prostitution, sex trafficking, and other illicit activities occurring at [Riti's] [m]otel." *Id.* (¶ 55) at 16; *see id.* (¶ 57) at 17 ("In June 2015, police responded to the American Inn & Suites to investigate claims made by a ministry outreach program for sex trafficking victims that a minor was being trafficked for sex out of the hotel."); *id.* at 17 ("In September 2015, police responded to American Inn & Suites to investigate yet another claim related to multiple minors being sold for sex out of a hotel room rented by two adult men.").

Given that Riti knew of the widespread reports of sex trafficking and prostitution at its motel, the signs and symptoms of K.H.'s trafficking should have been even more compelling to Riti. That K.H. was being trafficked was not unusual; it was a common occurrence at Riti's motel. *See, e.g.*, *M.A.*, 425 F. Supp. 3d at 967-68 (describing "M.A.'s allegations against Choice" as "the most detailed," including "an online review ... that alleges the review[er] was 'solicited

for drugs and by prostitutes'" and finding that "M.A.'s allegations are sufficient to meet the negligence standard" because she "Defendants were on notice about the prevalence of sex trafficking generally at their hotels" and "[M.A.] also alleges facts specific to her own sex trafficking, including a number of signs she alleges should have alerted staff to her situation").

### C. The district court simply misread K.H.'s factual allegations of Riti's knowledge.

Although the district court claims that it did *not* decide whether K.H. had sufficiently alleged Riti's knowledge, the only way to read the district court's order as a whole is that, in fact, the district court did decide this fourth element.

In its order, the district court said that, "[b]ecause the Court finds that K.H. has not sufficiently alleged facts to support the second element of her TVPRA beneficiary claim, it need not discuss whether there are allegations sufficient to support the fourth element, namely, whether she alleges that Riti has actual or constructive knowledge of K.H.'s sex trafficking." R-31 at 12 n.3.

The problem with that disclaimer, and why it cannot be taken at face value, is that, in deciding the second element of K.H.'s claim, the district court did not actually decide participation—it really just decided knowledge under the guise of the participation. As K.H. set forth in the previous argument section, the district court's basis for finding that K.H. had not sufficiently alleged a "continuous business relationship" had nothing to do with participation.

Instead, the types of factual allegations the district court identified as showing a "continuous business relationship" are allegations that the motel's employees "observed the minor victim in common areas of the hotel wearing little clothing during regular school hours," "observed the plaintiff and other trafficking victims' inappropriate appearances, dozens of adult men went into the plaintiff's hotel room, and condoms, drugs, and weapons were located in the plaintiff's hotel room," and "observed the condition of the plaintiffs room where the trafficking occurred and the frequency of the victims being trafficked." R-31 at 11-12.

In other words, rather than ask whether K.H. had alleged a continuous business relationship, the district court instead asked whether K.H. has alleged that the motel's employees "**observed**" various signs of sex trafficking. *Id.* (emphasis added). That question has nothing to do with participation, and everything to do with knowledge. And that is confirmed by the district court's holding—"K.H.'s Complaint fails to contain similar allegations to plausibly allege Riti participated [sic] on a venture in which it **knew or should have known** that Laye engaged in sex trafficking of K.H." *Id.* at 12 (emphasis added).

Finally, as for why it found that K.H. had not sufficiently alleged Riti's actual or constructive knowledge, the district court noted that, "[i]n the instant case, [K.H.] generally alleges that Riti's employees observed evidence of sex trafficking as outlined by DHS and ECPAT-USA without actually stating which

indicators of sex trafficking were observed with respect to K.H." *Id.* at 12-13 n.3.

However, the district court simply misread K.H.'s complaint. For example, in paragraph 58, when she lists "***The Signs and Symptoms of K.H.'s Trafficking***," K.H. is *actually stating* that Riti observed her exhibit *every one* of those fourteen signs and symptoms. R-1 (¶ 58) at 17-18. In other words, K.H. alleges that Riti observed her exhibit fourteen signs and symptoms of sex trafficking. There were other signs and symptoms from DHS guidelines that K.H. did not exhibit. But the fourteen signs that Riti did observe K.H. exhibit constitute "the vast majority" of the signs and symptoms from DHS's guidelines. *Id.*

And even assuming that there were some ambiguity in paragraph 58, such ambiguity should be resolved in K.H.'s favor under the liberal notice pleading standard. The Court must "read the complaint as a whole," and "a formulaic misstep by counsel is not fatal." *Aldana*, 416 F.3d at 1252 n.11. A pleading is judged by its "substance rather than according to its form or label and, if possible, it will be construed to give effect to all its averments." *Id.*; *see Speaker*, 623 F.3d at 1382 ("[r]eading Speaker's Amended Complaint as a whole" and rejecting the CDC's arguments because it "reads the Amended Complaint far too narrowly").

Given that the sub-heading directly preceding paragraph 58 is prominently labeled "***The Signs and Symptoms of K.H.'s Trafficking***," the only fair reading of K.H.'s complaint is that what follows is, in fact, the signs and symptoms that Riti

observed. R-1 at 17-18. Similarly, given that the first words of paragraph 58 are "**Regarding K.H.**," *id.* (emphasis added), the district court simply misread K.H.'s complaint when it held that K.H. does not "actually stat[e] which indicators of sex trafficking were observed **with respect to K.H.**," R-31 at 13 n.3 (emphasis added). What K.H. lists in paragraph 58 are the signs and symptoms that Riti observed, and they are the signs and symptoms with respect to her. And those signs of K.H.'s trafficking observed by Riti are in addition to the fact that Riti's staff were familiar with Laye specifically because he had been "staying at [Riti's] hotel to traffic girls on multiple occasions for multiple days," and Riti knew more generally of sex trafficking at its hotel. R-1 (¶¶ 60, 52-57) at 15-17, 19.

Thus, K.H.'s factual allegations are more than sufficient to show that Riti had actual or constructive knowledge that the venture with Laye violated the TVPRA as to K.H., and the district court erred in dismissing K.H.'s complaint on this basis (whether it did so under the guise of the participation element or whether properly considered under the knowledge element).

## Conclusion

For those reasons, the Court should reverse the district court's order dismissing K.H.'s complaint and final judgment in Riti's favor.

Signature and certificate pages follow.

K.H. submits this brief on July 26, 2023.

**/s/ Naveen Ramachandrappa**

Matthew B. Stoddard
Ga. Bar No. 558215
Belle-Anne B. Cooper
Ga. Bar No. 561983
THE STODDARD FIRM
1534 N Decatur Road
Atlanta, GA 30307
Tel: 470-467-2200
Fax: 470-467-1300
*matt@legalhelpga.com*
*ba@legalhelpga.com*

Naveen Ramachandrappa
Ga. Bar No. 422036
BONDURANT, MIXSON &
ELMORE, LLP
1201 W Peachtree St NW
Ste 3900
Atlanta, GA 30309
Tel: 404-881-4100
Fax: 404-881-4111
*ramachandrappa@bmelaw.com*

*Attorneys for Appellant-Plaintiff K. H.*

**<u>Certificate Of Compliance</u>**

This brief complies with the type-volume limitation of Fed. R. App. P. 32 (a)(7)(B) because this brief contains a total of 8,172/13,000 words, excluding the parts of the brief exempted by Fed. R. App. P. 32 (f) and 11th Cir. R. 32-4.

This brief also complies with the typeface requirements of Fed. R. App. P. 32 (a)(5) and the type style requirements of Fed. R. App. P. 32 (a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word with size 14 Times New Roman font.

This certification is made on July 26, 2023.

**<u>/s/ Naveen Ramachandrappa</u>**

## Certificate Of Service

I certify that, on July 26, 2023, I filed **Appellant-Plaintiff K.H.'s Principal Brief** with the Clerk of Court using the CM/ECF system, which will serve this document on the following counsel of record:

Roger E. Harris
Marissa H. Merrill
SWIFT, CURRIE, MCGHEE, HIERS, LLP
1420 Peachtree Street NE, Suite 800,
Atlanta, GA 30309
Tel: 404-888-6175
Fax: 404-888-6199
*roger.harris@swiftcurrie.com*
*marissa.merrill@swiftcurrie.com*

**/s/ Naveen Ramachandrappa**