No. 23-11682-J

# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

K.H.,
*Appellant-Plaintiff*

v.

RITI, INC. D/B/A AMERICAN INN & SUITES,
*Appellee-Defendant.*

Appeal from the United States District Court
for the Northern District of Georgia
Case No. 1:22-cv-03404-MHC

## Brief of Appellee-Defendant

Kori Wagner
Tracy Ann Gilmore
Marissa Holly Merrill
SWIFT, CURRIE,
MCGHEE & HIERS, LLP
1420 Peachtree Street NE
Suite 800
Atlanta, GA 30309
(404) 874-8800
kori.wagner@swiftcurrie.com
tracy.gilmore@swiftcurrie.com
marissa.merrill@swiftcurrie.com

Laurie Webb Daniel
WEBB DANIEL
FRIEDLANDER LLP
75 14th Street NE
Suite 2450
Atlanta, GA 30309
(404) 795-5088
laurie.daniel@webbdaniel.law

*Counsel for Appellee-Defendant*

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

The undersigned counsel of record for Defendant/Appellee Riti, Inc. d/b/a American Inn & Suites hereby submit the following Certificate of Interested Persons and Corporate Disclosure Statement pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rule 26-1.1:

1. Auto-Owners Insurance Company (Insurance carrier for Riti, Inc.)

2. Bondurant, Mixson & Elmore, LLP (Counsel for Plaintiff-Appellant)

3. Cohen, The Honorable Mark H. (United States District Court Judge)

4. Cooper, Belle-Ann Bowen (Counsel for Plaintiff-Appellant)

5. Daniel, Laurie Webb (Counsel for Defendant-Appellee)

6. Gilmore, Tracy Anne (Counsel for Defendant-Appellee)

7. Harris, Roger (Counsel for Defendant-Appellee)

8. K.H. (Plaintiff-Appellant)

9. McDonald, Skyler (Counsel for Defendant-Appellee)

10. Merrill, Marissa Holly (Counsel for Defendant-Appellee)

11. Ramachandrappa, Naveen (Counsel for Plaintiff-Appellant)

12. Riti, Inc. d/b/a American Inn & Suites (Defendant-Appellee)

13. Patel, Devangini (Sole shareholder of Riti, Inc.)

14. Stoddard, Matthew (Counsel for Plaintiff-Appellant)

15.     Swift, Currie, McGhee & Hiers, LLP (Counsel for Defendant-Appellee)

16.     The Stoddard Firm (Counsel for Plaintiff-Appellant)

17.     Wagner, Kori (Counsel for Defendant-Appellee)

18.     Webb Daniel Friedlander LLP (Counsel for Defendant-Appellee)

The undersigned certifies that, upon information and belief, no publicly traded company or corporation has an interest in the outcome of this appeal.

Submitted this 10th day of October, 2023.

*/s/ Laurie Webb Daniel*
Laurie Webb Daniel
WEBB DANIEL FRIEDLANDER LLP
75 14th Street NE
Suite 2450
Atlanta, GA 30309
(404) 433-6430
laurie.daniel@webbdaniel.law

Kori Wagner
Tracy Ann Gilmore
Marissa Holly Merrill
SWIFT, CURRIE,
 MCGHEE & HIERS, LLP
1420 Peachtree Street NE
Suite 800
Atlanta, GA 30309
(404) 874-8800
kori.wagner@swiftcurrie.com
tracy.gilmore@swiftcurrie.com
marissa.merrill@swiftcurrie.com

*Attorneys for Appellee-Defendant*

**STATEMENT REGARDING ORAL ARGUMENT**

There will be occasion for this Court to further sharpen the TVPRA legal test announced in *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714 (11th Cir. 2021)—particularly as it relates to the averments required to state a claim. But this case is not it.

All parties agree that, to state a claim under the TVPRA, a Plaintiff must adequately allege actual or constructive knowledge that the Plaintiff *herself* was being trafficked at the hotel. This is settled law in the circuit and not the matter of any debate among the district courts within it. Yet, even on Plaintiff's generous reading of her own Complaint, all but a few paragraphs relate instead to Riti's constructive knowledge that some persons—but not necessarily *K.H.*—had been victims of trafficking at the hotel. *See* Docket Entry ("Doc.") 1 ¶¶ 46-51 ("The Industry Knowledge"); ¶¶ 52-54 ("The Online Reviews"); ¶¶ 55-57 ("The Law Enforcement Activity"). The only allegations that even arguably relate specifically to K.H. are the conclusory remarks of a plaintiff without the facts to elevate her claim from possible to plausible. *See, e.g., Franklin v. Curry*, 738 F.3d 1246, 1251 (11th Cir. 2013) ("[B]y alleging Appellants 'knew or should have known' of a risk, Franklin has merely recited an element of a claim without providing the facts from which one could draw such a conclusion."); *Mamani v. Berzain*, 654 F.3d 1148,

1153 (11th Cir. 2011) ("Legal conclusions without adequate factual support are entitled to no assumption of truth.").

In short, Plaintiff's pleading provides an exemplar of the conclusory allegations that, ever since *Iqbal* and *Twombly*, have failed to meet the dictates of Rule 8(a)(2). At a minimum, Rule 8 requires sufficient detail to render a claim "plausible on its face," and a cut-and-pasted collection of common "signs and symptoms" of trafficking does not suffice. *See* Doc. 1 ¶ 58.

This Court would not benefit from argument about pleading requirements that have been understood for a decade-and-a-half or TVPRA elements that cannot be clarified without clearer allegations as to what, exactly, the Defendant has done to harm *this Plaintiff*. Bad facts make bad law, but *no facts* make worse law, still.

# TABLE OF CONTENTS

CIP AND CORPORATE DISCLOSURE STATEMENT………………………C-1

STATEMENT REGARDING ORAL ARGUMENT………………………………i

STATEMENT OF THE ISSUES…………………………………………………..1

STATEMENT OF THE CASE…………………………………………………….2

    Factual and Procedural Background…………………………………………2

    Standard of Review……………………………………………………………3

SUMMARY OF ARGUMENT……………………………………………………5

ARGUMENT………………………………………………………………………6

I.     Plaintiff failed to sufficiently allege that Riti "participated in
       a venture" with her trafficker…………………………………………………..7

II.    Plaintiff failed to sufficiently allege that Riti "knew or should
       have known" that she was being trafficked………………………………...15

CONCLUSION…………………………………………………………………...17

# TABLE OF CITATIONS

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ................................................................................. 4

** *Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) .................................................................. 4, 13, 16

*Czeremcha v. Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO*,
   724 F.2d 1552 (11th Cir. 1984) ............................................................ 3

** *Doe #1 v. Red Roof Inns, Inc.*,
   21 F.4th 714 (11th Cir. 2021) .................................................... Passim

*Franklin v. Curry*,
   738 F.3d 1246 (11th Cir. 2013) ............................................................. i

*Garfield v. NDC Health Corp.*,
   466 F.3d 1255 (11th Cir. 2006) ............................................................ 3

*J.G. v. Northbrook Indus., Inc.*,
   619 F. Supp. 3d 1228 (N.D. Ga. 2022) .............................................. 16

*M.A. v. Wyndham Hotels & Resorts, Inc.*,
   425 F. Supp. 3d 959 (S.D. Ohio 2019) .............................................. 11

*Mamani v. Berzain*,
   654 F.3d 1148 (11th Cir. 2011) ................................................ i, 4, 16

*Ricchio v. McLean*,
   853 F.3d 553 (1st Cir. 2017) ............................................................ 7, 8

*S.Y. v. Naples Hotel Co.*,
   476 F. Supp. 3d 1251 (M.D. Fla. 2020) ............................................ 12

*Schuurman v. Motor Vessel Betty K V*,
   798 F.2d 442 (11th Cir. 1986) ............................................................. 3

**Statutes**

18 U.S.C. § 1591 ..................................................................................... 2, 6

**Rules**

Federal Rule of Civil Procedure 8 ........................................................... 4

## STATEMENT OF THE ISSUES

(1)     Did the district court correctly conclude that Plaintiff failed to plausibly allege Defendant Riti, Inc. ("Riti") "participated in a venture" with Plaintiff's trafficker?

(2)     Did the district court correctly dismiss the complaint because Plaintiff failed to allege facts—instead of bald conclusions—sufficient to state a claim that Riti had constructive knowledge that Plaintiff *herself* was being trafficked?

## STATEMENT OF THE CASE

### *Factual and Procedural Background*

Plaintiff K.H. alleges that, for months at a time between 2011 and 2015, she was trafficked for sex by a man named Darrell Laye, Jr.[1] at the American Inn & Suites motel owned and operated by Riti. Doc. 1 ¶¶ 2-3. When her trafficking allegedly began, K.H. was a sixteen-year-old who had run away from a group home and sought support from Laye, who instead conscripted her into years of prostitution. *Id.* ¶¶ 16-18, 24-25.

Plaintiff sued Riti under the federal Trafficking Victims Protection Reauthorization Act ("TVPRA"), which affords victims a civil remedy against knowing beneficiaries of sex-trafficking ventures. *See* 18 U.S.C. § 1595(a). Riti moved to dismiss Plaintiff's complaint, contending that Plaintiff failed to render plausible the conclusory assertions relating to the second and fourth elements of the *Red Roof* test. *See* Doc. 13-1 at 5.

In this Court, to state a "beneficiary claim" under the TVPRA, a plaintiff must present plausible allegations that a defendant has "(1) knowingly benefited, (2) from taking part in a common undertaking or enterprise involving risk and potential benefit, (3) that undertaking or enterprise violated the TVPRA as to the

---

[1] According to the Complaint, Laye is in prison "and is still actively facing multiple felony charges including aggravated assault, aggravated battery, and cruelty to children." Doc. 1 ¶ 32.

plaintiff, and (4) the defendant had constructive or actual knowledge that the undertaking or enterprise violated the TVPRA as to the plaintiff." *Doe #1 v. Red Roof Inns, Inc*., 21 F.4th 715, 726 (11th Cir. 2021).

After full briefing, and even some preliminary discovery, United States District Judge Mark Cohen granted Riti's motion. *See* Doc. 31. Although he decided the motion based on the second element, in so doing, he appears to have decided the fourth element, too. The dismissal order did not state whether it was with or without prejudice. Nonetheless, rather than seek leave to amend to attempt to cure the pleading deficiencies, Plaintiff elected to file this appeal.

### *Standard of Review*

By not seeking leave to amend, Plaintiff has elected to stand on her original complaint and thereby "waives [her] right to further amendment." *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1260 (11th Cir. 2006); *see also Schuurman v. Motor Vessel Betty K V*, 798 F.2d 442, 445 (11th Cir. 1986) ("[A]n order dismissing a complaint [even with] leave to amend becomes a final decision if the plaintiff elects to file an appeal rather than an amended complaint."); *Czeremcha v. Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO*, 724 F.2d 1552, 1554 (11th Cir. 1984) (indicating that if the order is silent as to amendment, "a plaintiff has a choice either of pursuing a permissive right to amend a complaint after dismissal or of treating the order as final and filing for appeal").

Because Plaintiff opted for an immediate appeal rather than an amendment of her pleading, the order must be viewed as a dismissal with prejudice, which is reviewed *de novo*, applying the same standards the district court used. *Red Roof,* 21 F.4th at 723. Federal Rule of Civil Procedure 8(a)(2) requires that a complaint provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8's pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A complaint that provides "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" is not adequate to survive a Rule 12(b)(6) motion to dismiss. *Twombly*, 550 U.S. at 555. Rather, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face"—meaning one that is more than merely "possible." *Iqbal*, 556 U.S. at 678. Factual allegations that are "'merely consistent with' a defendant's liability" fall short. *Id*. at 678 (quoting *Twombly*, 550 U.S. at 557). The plausibility standard "calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" of the defendant's liability. *Twombly*, 550 U.S. at 556. But if allegations are indeed more conclusory than factual, then the court does not have to assume their truth. *See Mamani v. Berzain*, 654 F.3d 1148, 1153–54 (11th Cir. 2011).

## SUMMARY OF ARGUMENT

This Court should affirm the district court's dismissal of Plaintiff's TVPRA claim, as the district court correctly examined Plaintiff's pleading according to the legal test established in *Red Roof*.

First, the district court correctly reasoned that Plaintiff failed to plausibly allege that Riti "participated in a venture" with Plaintiff's trafficker (the second element of the *Red Roof* test). Neither Plaintiff's complaint, nor her briefing in the district court, nor even her principal brief on appeal, explains what that venture actually *is*—whether a "sex-trafficking venture," a "commercial venture" of one sort or another, or something else entirely. The failure to present a clear and coherent theory betrays Plaintiff's inability to allege *either* Riti's "direct participation" in Laye's sex-trafficking venture *or* a "continuous business relationship" that is indicative of the hotel operator's constructive knowledge.

Second, in addition to finding that Plaintiff did not sufficiently allege that Riti "participated in a venture" with her trafficker, the district court concluded that Plaintiff did not sufficiently allege that Riti had "actual or constructive knowledge that the undertaking or enterprise violated the TVPRA as to the Plaintiff" (the fourth element of the *Red Roof* test). *See* Pl. Br. at 28. But that also is a valid conclusion because the complaint lacks sufficient factual material to support the insinuation that Riti was on notice that *K.H.* was being trafficked.

# ARGUMENT

The Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. § 1591, prohibits the sex trafficking of children or adults by force, fraud, or coercion. In addition to that criminal prohibition, the Act provides sex-trafficking victims with a civil cause of action against "the perpetrator (or whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter)." 18 U.S.C. § 1595(a). Plaintiff alleges that the owner-operator of the hotel from which she was trafficked is one such "beneficiary" of her trafficking subject to liability.

The motion to dismiss, and thus this appeal, concerns the second and fourth elements of the *Red Roof* test in which this Court identified the elements of a civil claim under the TVPRA, requiring a plaintiff to prove that the defendant (1) knowingly benefited, (2) from participating in a venture, (3) that violated the TVPRA as to the plaintiff; and (4) knew or should have known that the venture violated the TVPRA as to the plaintiff. *Red Roof*, 21 F.4th at 726. As discussed below, however, the district court correctly concluded that the Plaintiff's allegations in this case failed to satisfy both the second and fourth essential elements of her claim.

**I.    Plaintiff failed to sufficiently allege that Riti "participated in a venture" with her trafficker.**

In *Red Roof*, this Court declined to incorporate the definition of "participation in a venture" from the criminal provisions in Section 1591—opting instead for an interpretation that comported with the "plain meaning" of that phrase. 21 F.4th at 724. Referencing the Black's Law Dictionary definitions of "participation" and "venture," the Court read "participation in a venture" as requiring a plaintiff to allege that the beneficiary "took part in a common undertaking or enterprise involving risk and potential profit." *Id.* at 724-25.

Plaintiff, however, would rather read the term "common" out of this definition entirely. According to Plaintiff, "Riti took part in the venture by directly renting the rooms" without which "Laye could not have trafficked K.H." Pl. Br. at 14. Plaintiff insists that this "but for" allegation is sufficient to establish a "common undertaking or enterprise," because *Red Roof* suggests in dicta that allegations like those in the First Circuit's *Ricchio v. McLean* decision would suffice to establish "participation in a venture." *Red Roof,* 21 F.4th at 725-26 (discussing *Ricchio v. McLean,* 853 F.3d 553 (1st Cir. 2017)). But *Ricchio* looks nothing like this case. *Ricchio* addressed far more than "but for" causation. There,

- McLean, the trafficker, had prior commercial dealings with the hotel owner-operators, the Patels, which the parties wished to reinstate for profit.

- McLean and Mr. Patel enthusiastically expressed this intent by exchanging high-fives in the motel's parking lot while speaking about "getting this thing going again."

- McLean's coercive and abusive treatment of the plaintiff-victim, Ricchio, as a sex slave had become apparent to the Patels. Ms. Patel had not only nonchalantly ignored Ricchio's plea for help in escaping from McLean's custody at the motel but, when visiting the rented quarters to demand further payment, had shown indifference to Ricchio's obvious physical deterioration.

- In plain daylight view of the front office of the motel, either of the Patels on duty there would have seen McLean grab Ricchio, kick her, and force her back toward the rented quarters when she had tried to escape.

*Ricchio*, 853 F.3d at 555.

It was in these circumstances, that "it was a plausible understanding that McLean was forcing sex in the motel room where he held Ricchio hostage, and fairly inferable that the gainful business that Mr. Patel and McLean spoke of had been and would be in supplying sexual gratification." *Id*. And, given these circumstances, "it is likewise inferable that the Patels understood that in receiving money as rent for the quarters where McLean was mistreating Ricchio, they were associating with him in an effort to force Ricchio to serve their business objective." *Id.*

In other words, the "common undertaking" in *Ricchio* was a *sex-trafficking venture*—rooted in prior dealings between the hotel operator and the trafficker, and renewed with a high-five. *See id.* at 557 ("McLean's actions . . . were indications of what he and Mr. Patel had in mind when McLean spoke of 'this thing.'").

Likewise, the allegations in *Red Roof* itself reveal a "common undertaking" (at least between the hotel operators and the trafficker) that is simply absent here. Plaintiffs there alleged that "[s]ome of the hotels' employees worked with the traffickers by, for example, acting 'as lookouts, notifying traffickers if police were present'"—assistance for which the traffickers "paid these employees in cash or drugs." *Red Roof,* 21 F.4th at 720. When Judge Jordan opined in his *Red Roof* concurrence that "similar claims against those who own, operate, or manage the hotels in question (*e.g.*, franchisees [rather than the franchisors actually sued]) would withstand a Rule 12(b)(6) motion to dismiss," the critical circumstances informing his position were the allegations under review in that case—*e.g.*, hotel employees who "worked with the traffickers" by providing lookouts in exchange for cash or drugs. *Id.* at 729-30 (Jordan, J., concurring).

Had the *Red Roof* plaintiffs sued the owner-franchisee, they might have survived a motion to dismiss by alleging a common sex-trafficking venture between the owner and trafficker. Or, had those plaintiffs, in suing the franchisor, alleged *not* a sex-trafficking venture but a "commercial venture[] to operate hotels," they, too, might have survived the motion to dismiss. *See id.* at 727. But not even their amended complaint alleged a "common commercial venture" in which both the trafficker and defendant participated. *Id*. Instead, the plaintiff in

*Red Roof* defined a venture that was not "common" to the defendant and the trafficker. And the lack of a common venture doomed the complaint.

The same is true here. In this case, Plaintiff appears to be trying to allege a sex-trafficking venture. But Plaintiff failed to provide the factual support to render plausible a claim that Riti and Laye were involved in such a "common undertaking." Indeed, Plaintiff has gone to some lengths to avoid defining what that undertaking actually entailed—insisting only that it need not involve "the trafficking itself." Pl. Br. at 19. But that allegation is not enough.

In the parlance of the *Red Roof* Court, Plaintiff's failure to say what the alleged "common undertaking" actually is renders the complaint deficient. Plaintiff did not identify any "common undertaking or enterprise involving risk and potential profit," whether nefarious or otherwise, in which Riti and Laye participated *together*. And, having declined the opportunity to request re-pleading in the district court, Plaintiff cannot fix that now. *See Red Roof*, 21 F.4th at 727. In *Red Roof*, the plaintiffs "chose to frame the ventures at issue as sex trafficking ventures in their amended complaints. Yet they have provided no plausible allegations that the franchisors took part in the common undertaking of sex trafficking." *Id*. There, the plaintiffs tried to fix this deficiency on appeal, where they alleged "something different"—that "the franchisors participated in commercial ventures to operate hotels and that those hotel ventures violated the

statute." *Id*. But this Court rejected that ploy for two reasons. "First, it is incompatible with the allegations in the Does' complaints. . . . Second, the [plaintiffs] failed to present this theory to the district court when given the opportunity." *Id.*

Here, Plaintiff plays dumb by suggesting some lack of clarity in the distinction between "acting as a lookout for traffickers" and merely renting rooms to them. *See* Pl. Br. at 19. That distinction, of course, lies in the implication of a shared understanding that is present in the former case and absent in the latter; after all, there are no truly innocent "lookouts," but there are plenty of innocent hotel clerks charged with renting hotel rooms. Even Plaintiff's two cited cases from out-of-circuit district courts included allegations of a common undertaking that swept well beyond mere "renting of rooms."

For example, in *M.A. v. Wyndham Hotels & Resorts, Inc*., 425 F. Supp. 3d 959, 967 (S.D. Ohio 2019), it was alleged that the "trafficker often requested rooms near exit doors"; guest room trash cans "would contain an extraordinary number of used condoms"; the "trafficker routinely instructed M.A. to refuse housekeeping services"; the victim "was routinely escorted by her trafficker in view of the front desk after her trafficker paid in cash for the reserved room"; "[d]espite her desperate pleas and screams for help, after being beaten or choked at the Defendants' hotel properties, the hotel staff ignored her and did nothing to

prevent the ongoing and obvious torture she endured while she was regularly trafficked for sex at Defendants' hotel properties"; her "trafficker operated the sex trafficking venture out of the same hotel room for multiple days or weeks in succession"; and "approximately ten (10) 'johns' per day . . . would enter and leave the [plaintiff's] hotel guest room."

Similarly, in *S.Y. v. Naples Hotel Co.*, 476 F. Supp. 3d 1251, 1257 (M.D. Fla. 2020), relevant allegations included: "Requests by the traffickers to rent rooms near exit doors"; "Cash payments for the rooms by the sex traffickers"; "Refusal of housekeeping services by those persons engaged in sex trafficking"; "Excessive used condoms located in the rooms used for sex trafficking"; "Excessive requests for towels and linens in the rooms used for sex trafficking"; "Hotel staff observing [plaintiffs] and their traffickers in the hotel"; plaintiffs "being escorted by traffickers in the hotel"; "Pleas and screams [for] help coming from the rooms of [plaintiffs]"; "Multiple men per day coming and going from the same rooms without luggage or personal possessions."

Plaintiff claims she adequately alleged that Riti "took part in a common undertaking or enterprise involving risk and profit with Laye" based on a laundry list of purported activities between the two. Pl. Br. at 13 (citing Doc. 1 at ¶ 37). But Plaintiff points only to vague, unadorned, conclusory recitations of TVPRA buzz words (i.e., Riti "knew or should have known [that Laye] was engaged in sex

trafficking" and "had a continuous business relationship" with Laye). *See id*. As it is, Plaintiff's allegations are the sort of "labels and conclusions" and simple pleading of the elements of a cause of action that do not pass muster under *Iqbal* or *Twombly.*

At bottom, Plaintiff failed to provide factual material to elevate, from possible to plausible, her assertion that Riti and her trafficker participated in a "common undertaking." Factual allegations that are "merely consistent with" a defendant's liability are not good enough, as the plausibility standard "calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" of the defendant's liability. *Twombly*, 550 U.S. at 556-57. And here, Plaintiff offered a list of what she alleges to be the indicia of trafficking at the motel, *see, e.g.,* Doc. 1 ¶ 37, but nothing to suggest that Riti and Laye actually participated in the same venture together.

The district court's application of the so-called "two way participation test"—requiring plausible allegations of either a "direct association" or a "continuous business relationship" between the defendant beneficiary and the sex trafficker—is no cause for concern. The test simply demands that the beneficiary either participate in the sex trafficking in some manner sufficient to evidence its *actual* knowledge (*i.e.,* "direct association") or have a sufficient history of business dealings with the trafficker such that it is effectively on notice and imputed with

*constructive knowledge* of the trafficking ("continuous business relationship"). *See* Doc. 31 at 8-12 (considering "the two ways in which a plaintiff can 'connect the dots' between the plaintiff's experience as a victim of sex trafficking and the specific defendant in the lawsuit").

Plaintiff seems not to appreciate that, if plausibly alleged, *either* theory will suffice to meet the second element of the TVPRA. The hypothetical she provides glibly suggests that a single *patently obvious* occurrence of sex trafficking before the eyes of a hotel employee might not constitute a "continuous business relationship." *See* Pl. Br. at 20-21. But it does not have to, because it clearly establishes the *actual* knowledge revealed by the "direct association" between motel operator and trafficker. Plaintiff's hypothetical does nothing to undermine the soundness of the district court's decision in this case.

Nor should this Court give any weight to Plaintiff's argument that the district court conflated the fourth element of the TVPRA standard (knowledge of TVPRA violation as to plaintiff) with the second element discussed above (participation in a venture). *See* Pl. Br. at 19, 24. An aspect of scienter is baked into that second element, as it is this shared understanding that renders an undertaking "common" in the first place. This is no sign of a flawed legal test or a flawed interpretation of the *Red Roof* requirements. Whereas the second element's requirement of a "common undertaking or enterprise" demands no more than

(actual or constructive) knowledge of the nature of the shared venture, the fourth element asks the more specific question whether the defendant had the (actual or constructive) knowledge that the venture violated the TVPRA *as to the plaintiff*. It is more than conceivable that a plaintiff might plausibly allege an illicit "venture" while failing to plausibly allege that the defendant knew or should have known that he or she was one of the victims of that venture. And here, Plaintiff's pleading failed on both fronts.

## II. Plaintiff failed to sufficiently allege that Riti "knew or should have known" that she was being trafficked.

The fourth element of the *Red Roof* test requires a TVPRA plaintiff to plausibly allege that the defendant knew or should have known that the undertaking or enterprise violated the TVPRA "*as to the plaintiff.*" *Red Roof,* 21 F.4th at 726 (emphasis added). The focus shifts from the defendant's perceptions of the *trafficker* to the defendant's perceptions of the *victim*, and general indicia of trafficking become relevant only insofar as they inform the context in which the victim presents to the defendant.

Rather than state, in plain English and with some basic modicum of detail, the ways in which *her* trafficking should have been obvious to Riti, Plaintiff instead recited verbatim the Department of Homeland Security's Guidelines to Identify and Prevent Sex Trafficking and asserted that they were apparent in her case. *See* Doc. 1 ¶ 58 & n.4 (providing link to DHS webpage). Indeed, Plaintiff

relegates to a footnote a discussion of the critical issue—whether she sufficiently alleged facts showing that Riti knew or should have known that she was being trafficked at Riti's hotel. *See* Pl. Br. at 26 n.10 (citing Doc. 1 ¶ 58).

Plaintiff contends that, while "[t]here were other signs and symptoms from DHS guidelines that K.H. did not exhibit," nonetheless "the fourteen signs that Riti observed K.H. exhibit constitute the vast majority of the signs and symptoms from DHS's guidelines." Pl. Br. at 26 n.11. But, whether Paragraph 58 of Plaintiff's complaint asserts that she exhibited all or merely some of the listed "signs and symptoms"—*see* Pl. Br. at 29-31—is immaterial. Plaintiff's near-perfect mapping of the DHS guidelines with no factual allegations linking those guidelines to herself betrays a conclusory "cut and paste" reliance on labels and an avoidance of the factual material needed to render her claim plausible.

To be clear: There is no *legal* defect at issue here. The problem is that Plaintiff chose a manner of pleading that relies on "signs and symptoms" that are more conclusory than factual in her attempt to state a claim, which is not sufficient under federal practice. *See Twombly*, 550 U.S. at 555; *Mamani*, 654 F.3d at 1153–54. The complaint fails to "connect the dots" to allege any facts as to how Riti knew or should have known of these signs and symptoms with respect to her. In contrast, as the district court noted, where a plaintiff has "connected the dots," a dismissal would be improper. *See J.G. v. Northbrook Indus., Inc.*, 619 F. Supp. 3d

1228, 1235-36 (N.D. Ga. 2022) (in case relied upon by Judge Cohen, district court found that victim plausibly alleged a beneficiary claim under TVPRA where she asserted "facts sufficient to allege" both a direct association and a continuous business relationship among the culpable parties). And Plaintiff's failure to request the chance to include additional facts in an amended pleading is telling. As in *Red Roof,* the deficiency of this complaint is no oversight. Rather, it is apparent that Plaintiff is not able—or intentionally chooses not even to try—to provide the minimum amount of facts required by *Twombly* and *Iqbal* to survive a motion to dismiss in federal court.

## CONCLUSION

For the foregoing reasons, the Court should affirm the district court's dismissal and entry of judgment.

Respectfully submitted this 10th day of October, 2023.

*/s/ Laurie Webb Daniel*
Laurie Webb Daniel
WEBB DANIEL FRIEDLANDER LLP
75 14th Street NE
Suite 2450
Atlanta, GA 30309
(404) 433-6430
laurie.daniel@webbdaniel.law

Kori Wagner
Tracy Ann Gilmore
Marissa Holly Merrill

SWIFT, CURRIE,
 MCGHEE & HIERS, LLP
1420 Peachtree Street NE
Suite 800
Atlanta, GA 30309
(404) 874-8800
kori.wagner@swiftcurrie.com
tracy.gilmore@swiftcurrie.com
marissa.merrill@swiftcurrie.com

*Attorneys for Appellee-Defendant*

# CERTIFICATE OF COMPLIANCE

1.     This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 3,813 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and 11th Cir. Rule 32-4.

2.     This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6), because it has been prepared in a proportionally spaced typeface using Times New Roman 14-point font.

This 10th day of October, 2023.

/s/ *Laurie Webb Daniel*
Laurie Webb Daniel
75 14th Street NE
Suite 2450
Atlanta, GA 30309
T: (404) 433-6430
laurie.daniel@webbdaniel.law

*Counsel for Appellee-Defendant*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 10, 2023, I electronically filed the foregoing

with the Clerk of the Court for the United States Court of Appeals for the Eleventh

Circuit by using the CM/ECF system, which system thereby electronically served

the same on Appellees' counsel of record:

Matthew B. Stoddard
Belle-Anne B. Cooper
THE STODDARD FIRM
1534 N Decatur Road
Atlanta, GA 30307
matt@legalhelpha.com
ba@legalhelpga.com

Naveen Ramachandrappa
BONDURANT MIXSON & ELMORE LLP
1201 W Peachtree St NW Ste 3900
Atlanta, GA 30309
ramachandrappa@bmelaw.com

/s/ *Laurie Webb Daniel*
Laurie Webb Daniel
75 14th Street NE
Suite 2450
Atlanta, GA 30309
T: (404) 433-6430
laurie.daniel@webbdaniel.law