Case No. 23-11682-J

# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

---

K. H.,
Appellant-Plaintiff,

v.

RITI, INC. D/B/A AMERICAN INN & SUITES,
Appellee-Defendant.

---

Appeal from the United States District Court
for the Northern District of Georgia

## Appellant-Plaintiff K.H.'s Reply Brief

Matthew B. Stoddard
Belle-Anne B. Cooper
THE STODDARD FIRM
1534 N Decatur Road
Atlanta, GA 30307

Naveen Ramachandrappa
BONDURANT MIXSON & ELMORE LLP
1201 W Peachtree St NW Ste 3900
Atlanta, GA 30309

*Attorneys for Appellant-Plaintiff K.H.*

**Amended Certificate of Interested Persons
And Corporate Disclosure Statement**

On May 25, 2023, Appellant-Plaintiff K.H. filed her stand-alone Certificate of Interested Persons and Corporate Disclosure Statement. After that filing, three new attorneys and one new law firm appeared on behalf of Appellee-Defendant Riti, Inc. d/b/a American Inn & Suites. *See* June 8, 2023 Not. of Appearance; Oct. 10, 2023 Br. of Appellee-Def. KH also realized that she had inadvertently omitted from her original Certificate the law firm that represented Riti in the district court and continues to represent Riti in this Court.

Thus, pursuant to Eleventh Circuit Rule 26.1-4, K.H. now submits this Amended Certificate, which adds five names that were not in K.H.'s original Certificate: **Laurie Webb Daniel**, **Skyler McDonald**, **Kori Wagner**, **Swift, Currie, McGhee & Hiers, LLP**, and **Webb Daniel Friedlander LLP**.

For the sake of completeness and accuracy, K.H. also provides this updated complete list of all trial judges, attorneys, persons, associations of persons, firms, partnerships, or corporations (including subsidiaries, conglomerates, affiliates, parent corporations, any publicly held corporation that owns 10% or more of the party's stock, and other identifiable legal entities related to a party) that have an interest in the outcome of this particular case or appeal:

- Auto Owners Insurance Company (Insurance Carrier for Appellee-Defendant Riti, Inc.)

- Bondurant, Mixson & Elmore LLP (Law Firm of Record for Appellant-Plaintiff K.H.)

- Cohen, Mark H., Hon. (District Court Judge, N.D. Ga.)

- Cooper, Belle-Anne B. (Counsel for Appellant-Plaintiff K.H.)

- Daniel, Laurie Webb (Counsel for Appellee-Defendant Riti, Inc.)

- Gilmore, Tracy A. (Counsel for Appellee-Defendant Riti, Inc.)

- Harris, Roger E. (Counsel for Appellee-Defendant Riti, Inc.)

- K.H. (Appellant-Plaintiff)

- McDonald, Skyler (Counsel for Appellee-Defendant Riti, Inc.)

- Merrill, Marrisa H. (Counsel for Appellee-Defendant Riti, Inc.)

- Patel, Devangini (Sole Shareholder of Appellee-Defendant Riti, Inc.)

- Ramachandrappa, Naveen (Counsel for Appellant-Plaintiff K.H.)

- Riti, Inc. d/b/a American Inn & Suites (Appellee-Defendant)

- Stoddard, Matthew B. (Counsel for Appellant-Plaintiff K.H.)

- The Stoddard Firm (Law Firm of Record for Appellant-Plaintiff K.H.)

- Swift, Currie, McGhee & Hiers, LLLP (Law Firm of Record for Appellee-Defendant Riti, Inc.)

- Wagner, Kori (Counsel for Appellee-Defendant Riti, Inc.)

- Webb Daniel Friedlander LLP (Law Firm of Record for Appellee-Defendant Riti, Inc.)

Counsel for Appellant-Plaintiff K.H. further certifies that no publicly traded company or corporation has an interest in the outcome of this case or appeal.

## **<u>Table of Contents</u>**

Introduction ..................................................................................................1

Argument.......................................................................................................3

    1.       K.H. properly pled that Riti knew or should have known that
             the venture with Laye violated the TVPRA as to K.H..........................3

          A.      By alleging that Riti observed K.H. exhibiting fourteen
                 signs of sex trafficking, K.H. properly pled Riti's
                 knowledge. .................................................................................3

          B.      The district court simply misread K.H.'s factual
                 allegations of Riti's knowledge. .................................................5

          C.      Riti tries to impose heightened pleading standards that do
                 not apply to K.H.'s claims. ........................................................6

    2.       K.H. properly pled that Riti participated in a venture with Laye. ......12

          A.      By alleging that Riti rented rooms to Laye for years, K.H.
                 properly pled Riti's participation. .............................................12

           B.      The two-way participation test applied by the district
                 court violates the TVPRA's plain language and *Red Roof*.......13

          C.      In any event, K.H. also satisfied the district court's two-
                 way participation test. ..............................................................19

Conclusion ...................................................................................................24

# Table of Citations

**U.S. Supreme Court Cases**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009).......................................................................................10

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007).......................................................................................10

**11th Circuit Cases**

*Doe #1 v. Red Roof Inns, Inc.*,
    21 F.4th 714 (11th Cir. 2021) .............................................................*passim*

*Sun Life Assurance Co. of Canada v. Imperial Premium Finance, LLC*,
    904 F.3d 1197 (11th Cir. 2018) ......................................................................7

*U.S. ex rel. Matheny v. Medco Health Sols., Inc.*,
    671 F.3d 1217 (11th Cir. 2012) ............................................................7, 8, 9

**Other Circuit Cases**

*G.G. v. Salesforce.com, Inc.*,
    76 F.4th 544 (7th Cir. 2023)...................................................................18, 20

*Ricchio v. McLean*,
    853 F.3d 553 (1st Cir. 2017).................................................................21, 22

**Federal District Court Cases**

*J.G. v. Northbrook Indus., Inc.*,
    619 F. Supp. 3d 1228 (N.D. Ga. 2022).........................................................14

*M.A. v. Wyndham Hotels & Resorts, Inc.*,
    425 F. Supp. 3d 959 (S.D. Ohio 2019)...................................................21, 22

*S.Y. v. Naples Hotel Co.*,
    476 F. Supp. 3d 1251 (M.D. Fla. 2020) ................................................14, 21

**Federal Statutes**

18 U.S.C. § 1595 .................................................................14, 17, 18, 20, 22

**Federal Rules**

Fed. R. Civ. P. 9 ...................................................................................7, 9

# Introduction

As the parties agree, this appeal involves only the second element (participation in a venture) and the fourth element (actual or constructive knowledge) of K.H.'s TVPRA claim against Riti as a beneficiary of sex trafficking. *See* K.H.'s Principal Br. at 1; Riti's Br. at 1. And in her Principal Brief, K.H. addressed those elements in that order—participation and then knowledge. But, for this Reply Brief, it makes sense to invert that order.

That's because, as Riti now concedes, knowledge is the true and sole basis for the district court's order and all of Riti's arguments on appeal. As Riti argues to this Court, "[a]n aspect of scienter is baked into that second element." Riti's Br. at 14. And Riti expressly defends the district court's "'two way participation test'" for the second element as a test of actual or constructive knowledge:

> The test simply demands that the beneficiary either participate in the sex trafficking in some manner sufficient to evidence its *actual* knowledge (*i.e.*, "direct association") or have a sufficient history of business dealings with the trafficker such that it is effectively on notice and imputed with *constructive knowledge* of the trafficking ("continuous business relationship").

*Id.* at 13-14 (emphasis in original).

So, once K.H. establishes that she properly pled Riti's knowledge—*i.e.*, that Riti knew or should have known that the venture with Laye violated the TVPRA as to K.H.—then she will have established that the district court's dismissal based on either the second element or the fourth element was error. Again, that's because,

accepting Riti's own argument, an absence of knowledge is also the basis for the district court's order and Riti's arguments on appeal even as to participation.

To be clear, though, the district court and Riti do incorrectly conflate the participation and knowledge elements of a TVPRA claim against a beneficiary. As K.H. will set forth in the second section of this Reply Brief, the plain language of the TVPRA and this Court's opinion in *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714 (11th Cir. 2021), reject the notion that "[a]n aspect of scienter is baked into that second element." Riti's Br. at 14. And this Court should expressly say that.

Otherwise, this Court and litigants will likely continue to see district court orders, like the one in this case, that confusingly say they don't decide the knowledge element when that is precisely what they decide. *Compare* R-31 (Order) at 12 n.3 ("Because the Court finds that K.H. has not sufficiently alleged facts to support the second element of her TVPRA beneficiary claim, it need not discuss whether there are allegations sufficient to support the fourth element ...."); *with id.* at 12 ("K.H.'s Complaint fails to contain similar allegations to plausibly allege that Riti participated [in] a venture in which it knew or should have known that Laye was engaged in sex trafficking of K.H."). After all, even Riti seems to agree that the district court decided both elements, even when the district court said it didn't. *See* Riti's Br. at 3 ("Although he decided the motion based on the second element, in so doing, he appears to have decided the fourth element, too.").

<u>**Argument**</u>

1.     **K.H. properly pled that Riti knew or should have known that the venture with Laye violated the TVPRA as to K.H.**

     A.     **By alleging that Riti observed K.H. exhibiting fourteen signs of sex trafficking, K.H. properly pled Riti's knowledge.**

In her complaint, K.H. has a section titled "***The Signs and Symptoms of K.H.'s Trafficking***." R-1 at 17 (emphasis in original). Right after that prominent section heading, K.H. alleges that, "[r]egarding K.H., [Riti] and/or its employees observed" fourteen signs and symptoms of K.H.'s trafficking. *Id.* at 17 (¶ 58).

Among other things, Riti observed K.H. "show signs of malnourishment, poor hygiene, fatigue, sleep deprivation, untreated illness, injuries, and/or unusual behavior." *Id.* (¶ 58.a). Riti observed K.H.'s "lack of freedom of movement." *Id.* at (¶ 58.b). Riti observed K.H. "have no control over or possession of money or ID." *Id.* at 18 (¶ 58.c). Riti observed K.H. "dress inappropriately for their age or have lower quality clothing compared to others." *Id.* (¶ 58.d). Riti observed "requests for room or housekeeping services (additional towels, new linens, etc.), but denial of hotel staff entry." *Id.* (¶ 58.e). Riti observed "the presence of multiple computers, cell phones, pagers, credit card swipers, or other technology in the room." *Id.* (¶ 58.f). Riti observed K.H.'s "extended stay with few or no personal possessions in the room." *Id.* (¶ 58.g). Riti observed "excessive amounts of sex paraphernalia in rooms (condoms, lubricant, lotion, etc.)." *Id.* (¶ 58.h). And that's just eight of the

fourteen signs. *Id.* at 18-19 (¶¶ 58.i-58.n, 59). K.H. also alleges that "[Riti's] staff was familiar with [K.H.'s] traffickers due to the traffickers staying at [Riti's] hotel to traffic girls on multiple occasions for multiple days." *Id.* at 19 (¶ 60).

Elsewhere in her complaint, K.H. alleges that Riti "had actual knowledge of the publicly available online ... reviews ... that reported prostitution, sex trafficking, and other illicit activities." *Id.* at 15 (¶ 52). The reviews complain about "**all of the [sic] hooker's running around this place**" and "**prostitution omg it's horrible**." *Id.* at 16 (¶¶ 53.a, 53.c) (emphasis in original). Similarly, Riti "had actual or constructive knowledge of law enforcement activity reporting widespread prostitution, sex trafficking, and other illicit activities occurring at [Riti's] hotel." *Id.* (¶ 55). The police investigated "claims made by a ministry outreach program for sex trafficking victims that a minor was being trafficked for sex out of the hotel" and "yet another claim related to multiple minors being sold for sex out of a hotel room rented by two adult men." *Id.* at 17 (¶¶ 57.a, 57.c). Given that Riti knew about these reports of sex trafficking at its motel, the signs and symptoms of K.H.'s trafficking should have been even more compelling to Riti.

Altogether, K.H.'s allegations establish that, at a minimum, Riti should have known that Laye was trafficking K.H. for sex at Riti's motel. "K.H.'s victimization followed a pattern that was readily observable and should have been obvious to [Riti's] hotel employees based on information available to the public at large and

to the hotel industry." *Id.* at 12 (¶ 44). Under "the knowledge which 'one using reasonable care or diligence should have,'" Riti should have known that Laye was trafficking K.H. for sex at Riti's motel. *Red Roof*, 21 F.4th at 725 (quoting Black's Law Dictionary (11th ed. 2019)).

### B. The district court simply misread K.H.'s factual allegations of Riti's knowledge.

In its dismissal order, the district court noted that "[K.H.] generally alleges that Riti's employees observed evidence of sex trafficking as outlined by DHS and ECPAT-USA without actually stating which indicators of sex trafficking were observed with respect to K.H." R-31 at 12-13 n.3.

But, as K.H. established in her Principal Brief, the district court simply misread K.H.'s complaint. In paragraph 58, K.H. is actually stating that Riti observed her exhibiting every one of those fourteen signs and symptoms. R-1 at 17-18 (¶ 58). K.H., through her attorneys, looked at all of the DHS guidelines, identified fourteen signs and symptoms that applied to her, and then listed in paragraph 58 *only* those signs and symptoms that applied to her. That's why the section heading reads: "***The Signs and Symptoms of K.H.'s Trafficking***." *Id.* at 17. Those are signs and symptoms that applied to K.H. specifically.

There were a small number of signs and symptoms from the DHS guidelines that did not apply to K.H., and so K.H. did not list those in paragraph 58. And that's also why K.H. pled that the fourteen signs and symptoms that do apply to her

constitute "the vast majority of the evidence that [DHS] posts as guidelines to identify and prevent [] sex trafficking for hotel staff to be vigilant in observing." *Id.* (¶ 58). In other words, even though Riti did not observe K.H. exhibiting all of the signs and symptoms from DHS guidelines, Riti still observed her exhibiting the vast majority of them—fourteen of them to be precise.

This fair reading of K.H.'s complaint, and one that construes the complaint in the light most favorable to the pleader, is further supported by the fact that the first clause of paragraph 58 says "Regarding K.H." *Id.* As such, everything that follows in paragraph 58—which despite its subparts is still one sentence—is about what Riti observed regarding K.H. And given that the first words of paragraph 58 are "**Regarding K.H.**," *id.* (emphasis added), the district court simply misread the complaint when it held that K.H. does not "actually stat[e] which indicators of sex trafficking were observed **with respect to K.H.**." R-31 at 13 n.3 (emphasis added).

**C.    Riti tries to impose heightened pleading standards that do not apply to K.H.'s claims.**

Notably, Riti does not defend the district court's order based on its actual reasoning. Instead, Riti says that "whether Paragraph 58 of [K.H.'s] complaint asserts that she exhibited all or merely some of the listed 'signs and symptoms' is immaterial." Riti's Br. at 16 (cite omitted). Riti then makes several arguments that try to impose heightened pleading standards that do not apply to K.H.'s claims.

For example, Riti argues that K.H. fails to "allege any facts as to **how** Riti

knew or should have known of these signs and symptoms with respect to her."
Riti's Br. at 16 (emphasis added).

But, as an initial matter, K.H. is not required to plead specific facts as to *how*
Riti acquired its knowledge. In fact, this Court rejected a similar argument when it
was made in *Sun Life Assurance Co. of Canada v. Imperial Premium Finance,
LLC*, 904 F.3d 1197 (11th Cir. 2018). There, Sun Life alleged that Imperial
tortiously interfered with Sun Life's contracts with producers. One element of a
tortious interference claim under Florida law is "the defendant's knowledge [of a
contract]." *Id.* at 1215. Imperial moved to dismiss, arguing that "Sun Life failed to
plead Imperial's knowledge of the producers' contracts with Sun Life." *Id.* The
district court agreed with Imperial, "concluding that: 'I don't see that specific facts
have been pled pursuant to Rule 9(b) as to how the Defendant [Imperial] knew of
the existence of the alleged producer contracts." *Id.*

On appeal, this Court reversed and "quickly set aside" Imperial's pleading
argument. *Id.* "Contrary to the district court's conclusion, Sun Life need not have
pled Imperial's knowledge of the relevant contracts with specificity, even
assuming Rule 9(b) applies." *Id.* "Sun Life expressly alleged that Imperial knew of
the producers' contracts with Sun Life," and that is all that is needed to plead
knowledge. *Id.*; *see also* Fed. R. Civ. P. 9 (b) ("Malice, intent, knowledge, and
other conditions of a person's mind may be alleged generally."); *U.S. ex rel.*

*Matheny v. Medco Health Sols., Inc.*, 671 F.3d 1217, 1224 (11th Cir. 2012) ("On Count II, Relators allege '[t]he creation of multiple random Discovery Sample lists was an intentional and knowing attempt' by the Defendants to make a false record .... Under Rule 9(b)'s standards, these general allegations are sufficient.").

The same is true here. Just as Sun Life alleged that Imperial knew of its contracts with producers, K.H. alleges that Riti observed her exhibiting fourteen signs that she was being trafficked for sex at Riti's motel. And just as Sun Life did not need to allege specific facts about how Imperial acquired that knowledge, neither does K.H. She can plead Riti's knowledge generally.

Of course, K.H. has actually pled specific facts about how Riti acquired its knowledge. K.H. alleges that Riti employed all "managers, housekeepers, and other staff at its hotel at all relevant times, giving Defendant specific and direct knowledge of sex trafficking, including the sex trafficking that victimized K.H." R-1 at 12 (¶ 43). For example, Riti's housekeepers observed "requests for room or housekeeping services (additional towels, new linens, etc.) but denial of **hotel staff** entry into the room." *Id.* at 18 (¶ 58.e) (emphasis added). K.H. also alleges that Riti's "staff was familiar with [K.H.'s] traffickers due to the traffickers staying at [Riti's] hotel to traffic girls on multiple occasions for multiple days." *Id.* at 19 (¶ 60). Thus, even if K.H. were required to plead specific facts about how Riti acquired its knowledge, K.H. has pled that as well.

As another example of its incorrect pleading arguments, Riti asserts that K.H. fails to provide "factual allegations linking [the DHS] guidelines to herself" and that K.H. relies on "labels and an avoidance of the factual material needed to render her claim plausible." Riti's Br. at 16.

However, what K.H. alleges in paragraphs 58-60 of her complaint are fact allegations and not merely labels. It would be a mere label or conclusory allegation if *all* that K.H. alleged was that Riti "had actual or constructive knowledge that K.H. was being trafficked for sex." R-1 at 12 (¶ 42). But that is not all that K.H. alleges. For example, K.H. alleges that Riti observed her showing "signs of malnourishment, poor hygiene, fatigue, sleep deprivation, untreated illness, injuries, and/or unusual behavior." *Id.* at 17 (¶ 58.a.). That is plainly an allegation of fact—K.H.'s physical appearance looked like a trafficking victim. As another example, K.H. alleges that Riti observed "excessive amounts of sex paraphernalia in rooms (condoms, lubricant, lotion, etc.)." *Id.* at 18 (¶ 58.h). Again, that is plainly an allegation of fact—Riti saw excessive sex paraphernalia in K.H.'s rooms.

Requiring anything more from K.H.'s complaint, such as "who," "when," "how," and "what," would amount to requiring K.H. to plead her claims "with particularity." *Matheny*, 671 F.3d at 1225. That is not required for allegations of knowledge. Knowledge may be pled generally. *See, e.g.*, Fed. R. Civ. P. 9 (b).

As for fact allegations that link the DHS guidelines to K.H., once again, that

is what paragraphs 58-60 do. K.H. did not merely plead that there exists out in the world DHS guidelines regarding signs of sex trafficking. Rather, K.H. pled that, out of all of the DHS signs and symptoms, Riti observed fourteen of them *regarding K.H.* That's why the section heading reads: "***The Signs and Symptoms of K.H.'s Trafficking***." R-1 at 17. And that's why the first words of paragraph 58 read "Regarding K.H." *Id.* (¶ 58). K.H. is telling Riti that what's listed in paragraph 58 are the signs and symptoms of *K.H.'s* trafficking and that they are the signs and symptoms that Riti observed *regarding her*.

While asserting that K.H. fails to link the DHS guidelines to herself, Riti simultaneously criticizes K.H. for her "near-perfect mapping of the DHS guidelines." Riti's Br. at 16; *see id.* at 15 (criticizing "verbatim" recitation).

But there's nothing improper or insufficient with K.H.'s reliance on the DHS guidelines to frame and plead her experience as a sex trafficking victim. If Riti wants to dispute whether all fourteen of the signs that K.H. has pled actually apply to her, then Riti can raise that in discovery, at a summary judgment, and at trial. But that's not an issue for a motion to dismiss. Indeed, even "extravagantly fanciful" allegations are entitled to "the presumption of truth," and even if "it strikes a savvy judge that actual proof … is improbable," "a well-pleaded complaint may proceed." *Ashcroft v. Iqbal*, 556 U.S. 662, 681, 696 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

To be clear, though, there's nothing "fanciful" about K.H.'s allegations. Any savvy person knows or should know that sex trafficking of young women like K.H., sadly, follows a typical pattern, such that the experiences of sex trafficking victims often sound very similar. Thus, it should be no surprise that K.H., through her attorneys, was able to identify the vast majority of the DHS guidelines and pled that those signs applied to her and were readily observable to Riti. Moreover, the reason that the DHS guidelines are important and why K.H. pled them in the complaint is to push her allegations from the merely "possible" to the "plausible." In fact, if K.H. had only listed the signs of her sex trafficking and nothing more, then Riti would have protested that those allegations don't plausibly show that it should have known about K.H.'s sex trafficking. The DHS guidelines help show that what Riti observed was more than merely possible signs of sex trafficking. Rather, they are plausible and well-recognized signs of it.

Finally, Riti asserts that K.H.'s "failure to request the chance to include additional facts in an amended pleading is telling." Riti's Br. at 17.

Yet, that says only thing: K.H. believes her complaint as originally pled, and when read under the proper legal standard that requires the complaint to be read as a whole and in the light most favorable to the pleader, is legally sufficient. Whether K.H. could have said more through an amendment is not the question; the question is whether K.H.'s complaint is *sufficient*. And by pleading that Riti

observed K.H. exhibiting fourteen signs of sex trafficking—as well as the fact that Riti knew about other reported victims of sex trafficking and was familiar with K.H.'s trafficker, Laye—K.H. has sufficiently pled that Riti knew or should have known that Laye was trafficking K.H. for sex at Riti's motel.

## 2. K.H. properly pled that Riti participated in a venture with Laye.

### A. By alleging that Riti rented rooms to Laye for years, K.H. properly pled Riti's participation.

In her complaint, K.H. has a section titled "**DEFENDANT TOOK PART IN A COMMON UNDERTAKING**." R-1 at 8 (emphasis in original). Right after that prominent section heading, K.H. alleges that Riti "took part in a common undertaking or enterprise involving risk or profit with [Laye] because" "[Laye] would pay in cash for one night at a time, booking the next night's stay before check-out"; "[Riti] directly rented rooms to [Laye, whom] it knew or should have known w[as] engaged in sex trafficking including the trafficking of [K.H.]"; and "[a]fter renting the room for the first night, [Laye] had prior commercial dealings with [Riti] and then reinstated those dealings." *Id.* at 8-9 (¶¶ 37.a-b., 37.g).

Elsewhere in her complaint, K.H. alleges that, "[b]eginning in 2011 and ending in 2015," "K.H. (along with multiple other human beings) was trafficked for sex by Darrell Laye, Jr. at [Riti's] hotel." *Id.* at 3 (¶ 3). "In the aggregate, K.H. was at [Riti's] hotel for years," and "K.H. was sexually assaulted hundreds of times while at [Riti's] property with Mr. Laye." *Id.* at 6 (¶¶ 22-23). And "[Riti's]

staff was familiar with [Laye] due to [Laye] staying at [Riti's] hotel to traffic girls on multiple occasions for multiple days." *Id.* at 19 (¶ 60).

Altogether, K.H.'s allegations easily establish that Riti participated in a venture with Laye. As this Court held in *Red Roof*, a "'venture'" just means "an undertaking or enterprise involving risk and potential profit," and "participation" just means "to take part in or share with others in common or in an association." 21 F.4th at 724-25. And K.H.'s allegations establish just that. The *venture* with Laye involved the trafficking of women, including K.H., which generated profits to Laye in the form of payment for the "right" to have sex with K.H. and others and which generated profits to Riti in the form of cash payments for the rooms. And Riti *participated* in the venture by, night after night and for around four years, directly renting Laye the rooms—the literal space—in which K.H. was sexually assaulted.

### B. The two-way participation test applied by the district court violates the TVPRA's plain language and *Red Roof*.

In its dismissal order, the district court appears to have held that K.H.'s allegations of Riti's years of direct room rentals to Laye are *legally* insufficient to establish Riti's participation based on a two-way[1] participation test. The district court held that a plaintiff must either allege "a '**direct association**' between the

---

[1] On further reflection, K.H. realizes that the term "two-way" may be a bit ambiguous. K.H. simply uses the term "two-way" to describe the district court's holding that there are only two ways of showing participation, and a plaintiff must allege one of those two ways to establish participation.

defendant hotel and the plaintiff's trafficker" or allege "a '**continuous business relationship**' between the defendant hotel and a sex trafficker where the defendant 'rented rooms to people it knew or should have known were engaged in sex trafficking.'" R-31 at 8-9 (emphasis added) (quoting *J.G. v. Northbrook Indus., Inc.*, 619 F. Supp. 3d 1228, 1235 (N.D. Ga. 2022)).

But, as K.H. established in her Principal Brief, this two-way participation test violates the TVPRA's plain language and this Court's opinion in *Red Roof*.

*First*, as applied by the district court, a "direct association" appears to require that the motel operator participate in the sex-trafficking act itself. *See* R-31 at 10-11 (focusing on allegations that the motel's employees "acted as a lookout for the traffickers" or "bought sex with trafficking victims"). Yet, the TVPRA's plain language makes clear that the only requirement is that the beneficiary participate *in the venture*—not the trafficking act itself. The TVPRA provides a claim against "whoever knowingly benefits ... from **participation in a venture**." 18 U.S.C. § 1595 (a) (emphasis added).

That's also why Judge Jordan, in his concurring opinion in *Red Roof*, explained that "the participation element of a 'beneficiary' claim under § 1595(a) **does not** require that the defendant in question have participated in the sex trafficking act itself." 21 F.4th at 730 (emphasis added); *see also S.Y. v. Naples Hotel Co.*, 476 F. Supp. 3d 1251, 1257 (M.D. Fla. 2020) (cited by Judge Jordan).

Moreover, the district court never defines or otherwise explains the meaning of the term "direct association"—let alone explain why acting as a lookout for traffickers constitutes a direct association, while directly renting rooms to a known trafficker does not constitute a direct association. That distinction makes no sense. Renting rooms to a known trafficker is just as much a direct association as acting as a lookout, and perhaps even more so. Without the rooms, there is no trafficking.

*Second*, as applied by the district court, the term "continuous business relationship" seemingly has nothing to do with participation. Instead, the district court conflated that term with the fourth element, knowledge. The types of factual allegations the district court identified as showing a "continuous business relationship" are all allegations that the motel's employees knew or should have known that the plaintiff was being trafficked. *See* R-31 at 11-12 (focusing on allegations that the motel employees "observed the plaintiff and other trafficking victims' inappropriate appearances"). But it makes no sense to say that a plaintiff must show a "continuous business relationship" and then ask whether the motel's employees "**observed**" various signs of sex trafficking. *Id.* at 11 (emphasis added). What the motel observed does not relate to a "continuous business relationship."

Moreover, the district court never defines or otherwise explains the meaning of the term "continuous business relationship." The district court also never explains how that term could be consistent with *Red Roof* or the TVPRA's plain

language. As this Court held in *Red Roof*, "the phrase 'participation in a venture' requires that [a plaintiff] allege that the [beneficiary] took part in a common undertaking or enterprise involving risk and potential profit." 21 F.4th at 724-25. Nothing in that plain-meaning interpretation requires a plaintiff to show a *continuous* business relationship, rather than just *a* business relationship.

Riti tries to defend the district court's two-way participation test, but it fails to do sp. To start, Riti tries to give meaning to and explain the test:

> The test simply demands that the beneficiary either participate in the sex trafficking in some manner sufficient to evidence its *actual* knowledge (*i.e.*, "direct association") or have a sufficient history of business dealings with the trafficker such that it is effectively on notice and imputed with *constructive knowledge* of the trafficking ("continuous business relationship").

Riti's Br. at 13-14 (emphasis in original).

But the only thing Riti's explanation does is reinforce K.H.'s argument that the two-way participation test is an incorrect conflation of the participation and knowledge elements. Riti literally says that "the beneficiary [must] either participate ... in some manner sufficient to evidence its *actual* knowledge (*i.e.*, 'direct association') or ... [its] *constructive knowledge* of the trafficking." *Id.* Why have actual or constructive knowledge as part of the participation element when it is already part of the knowledge element? It makes no sense, and it only serves to confuse litigants and district courts, as happened here.

Riti asserts that there is no conflation because "scienter is baked into that

second element, as it is this shared understanding that renders an undertaking 'common' in the first place." *Id.* at 14. However, the plain language of the TVPRA makes clear that there is no *separate* scienter requirement for participation.

The TVPRA authorizes claims against "whoever knowingly benefits ... from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter." 18 U.S.C. § 1595 (a) (2023). There are only two scienter requirements in that language. One involves the first element: the beneficiary must know that they are receiving a benefit. And the other involves the fourth element: the beneficiary must know or should have known that the venture has engaged in a violation of the TVPRA. That's it. There's no separate requirement that the beneficiary must *knowingly* participate.

Riti wants the TVPRA to be re-written to authorize only claims against "whoever knowingly benefits ... from [**knowing**] participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter." Riti's Br. at 6 (hypothetical addition in brackets). But, of course, that's not what the statutory language says. It also wouldn't support the two-way participation test anyway. Even if "knowing" were added to modify participation, then all that would require is that Riti *knowingly* rented rooms to Laye. And K.H.'s complaint plainly alleges that. There was no "accidental" rental by Riti.

Riti also says that there is a difference between the scienter required for the

second element—"knowledge of the nature of the shared venture"—and the scienter required for the fourth element—"knowledge that the venture violated the TVPRA *as to the plaintiff*." *Id.* at 15 (emphasis in original).

Yet, once again, that doesn't make any sense. If the plaintiff must satisfy the scienter requirement of the fourth element, which Riti says is a specific knowledge requirement, then the plaintiff would *always* satisfy the scienter requirement of the second element, which Riti says is a general knowledge requirement. If the beneficiary knew or should have known that the venture violated the TVPRA as to the plaintiff, then logically they know about the nature of the venture.

There's another problem with Riti's attempted explanation: it would create a circuit split. The Seventh Circuit has held that, "[t]o state a claim under Section 1595, a plaintiff needs to allege plausibly that the defendant had constructive knowledge that a venture *generally* has violated Section 1591. Knowledge of the specific victim, let alone knowledge of her identity, is not required." *G.G. v. Salesforce.com, Inc.*, 76 F.4th 544, 558 (7th Cir. 2023) (cite omitted).

And while this Court's opinion in *Red Roof* describes the fourth element differently than the Seventh Circuit does in *Salesforce.com*, this Court never reached the fourth element in *Red Roof*. Thus, that description is non-binding *dicta*. But, now presented with that issue more directly, adopting Riti's explanation of the allegedly different scienter requirements for the second and fourth elements would

create a circuit split and contradict the TVPRA's plain language, as explained by the Seventh Circuit. Rather than do that, this Court should hold that there is no separate scienter requirement for the second element and, under the facts here, there are sufficient allegations of the fourth element under any standard.

As for the assertion that K.H. "would rather read the term 'common' out of this definition [of participation] entirely," Riti misunderstands the meaning of the word "common." Riti's Br. at 7. The word "common" just means that Riti and Laye were taking part in a venture *together*, as opposed to separately pursuing independent ventures. That's all. Again, "participation" means "to take part in or share with others in common or in an association." *Red Roof*, 21 F.4th at 724-25. And Riti plainly took part in a venture with Laye by renting rooms *to Laye*, night after night for around four years, and accepting cash payments *from Laye*.

## C. In any event, K.H. also satisfied the district court's two-way participation test.

Not only is the district court's two-way participation test legally incorrect, the district court also incorrectly applied it to the facts here. In her complaint, K.H. alleges facts that satisfy either of the two ways of showing participation.

*First*, K.H. alleges that Riti directly associated with Laye. Among other things, K.H. alleges that "[Laye] would pay in cash for one night at a time, booking the next night's stay before check-out time," and "[Riti] directly rented rooms to [Laye, whom] it knew or should have known w[as] engaged in sex trafficking

including the trafficking of [K.H.]." R-1 at 8-9 (¶¶ 37.a-b.). And that shows Riti's direct association. *See, e.g.*, *Salesforce.com*, 76 F.4th at 559 ("[D]irect involvement in sex trafficking itself (e.g., transporting victims, **providing hotel rooms**) would satisfy Section 1595's 'participation' element") (emphasis added).

*Second*, K.H. alleges that Riti had a continuous business relationship with Laye. According to Riti, the second way of showing participation demands that the beneficiary "have a sufficient history of business dealings with the trafficker such that it is effectively on notice and imputed with *constructive knowledge* of the trafficking ('continuous business relationship')." Riti's Br. at 13-14. Yet, that's precisely what K.H. alleges here. While K.H. certainly believes that a one-time rental to a known sex trafficker can be sufficient to establish participation, *see* K.H.'s Principal Br. at 20-22, K.H. alleges far more than that.

K.H. alleges that, "[b]eginning in 2011 and ending in 2015," "K.H. (along with multiple other human beings) was trafficked for sex by Darrell Laye, Jr. at [Riti's] hotel." R-1 at 3 (¶ 3). "In the aggregate, K.H. was at [Riti's] hotel for years," and "K.H. was sexually assaulted hundreds of times while at [Riti's] property with Mr. Laye." *Id.* at 6 (¶¶ 22-23). "[Riti's] staff was familiar with [Laye] due to [Laye] staying at [Riti's] hotel to traffic girls on multiple occasions for multiple days." *Id.* at 19 (¶ 60). And "[a]fter renting the room for the first night, [Laye] had prior commercial dealings with [Riti] and then reinstated those

dealings" with each repeated room rental. *Id.* at 9 (¶ 37.g). Thus, Riti had "a sufficient history of business dealings with [Laye]"—*years* of nightly room rentals to Laye—"such that it [was] effectively on notice and imputed with *constructive knowledge* of the trafficking." Riti's Br. at 13-14.

In response to K.H.'s showing that she has also satisfied the district court's two-way participation test, Riti argues that the cases K.H. has cited involve more than just mere room rentals. *See Ricchio v. McLean*, 853 F.3d 553, 556 (1st Cir. 2017); *Red Roof*, 21 F.4th at 725-26; *M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F. Supp. 3d 959, 971 (S.D. Ohio 2019); *Naples Hotel*, 476 F. Supp. 3d at 1257. For example, Riti emphasizes that, in *Ricchio*, "McLean and Mr. Patel enthusiastically expressed this intent by exchanging high-fives in the motel's parking lot while speaking about 'getting this thing going again,' in circumstances in which McLean's coercive and abusive treatment of Ricchio as a sex slave had become apparent to the Patels." 853 F.3d at 555; *see* Riti's Br. at 8.

But nothing in *Ricchio*, any of the other cited cases, nor the TVPRA's plain language holds that a plaintiff must allege *enthusiastic* participation by the beneficiary. That's simply not a requirement of a TVPRA claim; it just happened to be that the beneficiary in *Ricchio* was particularly abhorrent.

And to be clear, K.H. does allege *more* than "mere 'renting of rooms.'" Riti's Br. at 11. Again, K.H. alleges that, for around four years and night after

night, Riti continued to rent its motel rooms to Laye, even after it observed K.H. exhibiting multiple signs of sex trafficking and observed Laye trafficking multiple other women for sex at Riti's motel. *See, e.g.*, R-1 at 19 (¶ 60) ("[Riti's] staff was familiar with [K.H.'s] traffickers due to the traffickers staying at [Riti's] hotel to traffic girls on multiple occasions for multiple days.").

Given those allegations of Riti's actual or constructive knowledge, K.H.'s allegations are quite similar to the allegations in cases like *Wyndham Hotels*, for example. Indeed, the district court there similarly rejected a defendant's attempt to use the egregious facts of *Ricchio* as some kind of legal standard. *See* 425 F. Supp. 3d at 966 ("M.A.'s allegations do not rise to the level of obviousness present in *Ricchio*. .... But M.A. does not need to prove reckless disregard under § 1595(a), only that the Defendants 'should have known' about the nature of the venture under a negligence standard."). *Wyndham Hotels* expressly holds that "Plaintiff has alleged sufficient facts to show Defendants 'participated in a venture' under § 1595 by alleging that Defendants **rented rooms** to people it knew **or should have known** [were] engaged in sex trafficking." *Id.* at 971 (emphasis added).

Riti also argues that there is a "distinction between 'acting as a lookout for traffickers' and merely renting rooms to them." Riti's Br. at 11. Riti says that there is "the implication of a shared understanding that is present in the former case and absent in the latter; after all, there are no truly innocent 'lookouts,' but there are

plenty of innocent hotel clerks charged with renting hotel rooms." *Id.*

Yet, once again, Riti's arguments demonstrate the incorrect conflation of the participation and knowledge elements, and they reinforce the fact that, once K.H. establishes that she properly pled Riti's actual or constructive knowledge, she will also have established Riti's participation. That's because if Riti knew or should have known that Laye was trafficking K.H. for sex and yet continued to rent rooms to him, then there's nothing "innocent" about Riti's participation. *Id.* Riti was choosing to rent rooms to and accept cash payments from someone it knew or should have known was using the rooms for sex trafficking.

Finally, Riti argues that K.H.'s "failure to say what the alleged 'common undertaking' actually is renders the complaint deficient." *Id.* at 10. According to Riti, K.H. "did not identify any 'common undertaking or enterprise involving risk and potential profit,' ... in which Riti and Laye participated *together*." *Id.*

But this Court may easily dispose of this last-ditch argument by Riti. For one thing, Riti never raised this argument in the district court, and nothing in Riti's pleadings below nor the district court's order suggests any confusion or misunderstanding as to what the venture between Riti and Laye entails.

In any event, K.H. has properly alleged a venture between Riti and Laye. Once more, a "'venture'" just means "an undertaking or enterprise involving risk and potential profit," and "participation" just means "to take part in or share with

others in common or in an association." *Red Roof*, 21 F.4th at 724-25. And K.H.'s allegations establish just that. The *venture* with Laye involved the trafficking of women, including K.H., which generated profits to Laye in the form of payment for the "right" to have sex with K.H. and others and which generated profits to Riti in the form of cash payments for the rooms. And Riti *participated* in the venture by, night after night and for around four years, directly renting Laye the rooms— the literal space—in which K.H. was sexually assaulted.

In sum, "[r]ather than taking reasonable steps to prevent sex trafficking, [Riti] – in the quest for profits – created and maintained a business model that attracts, facilitates, and encourages the commercial sex market by providing a private and anonymous venue for traffickers and buyers alike." R-1 at 12 (¶ 45). And Riti "knew or should have known that, without a venue, or crime scene, a sex trafficking venture ceases to exist." *Id.* at 15 (¶ 50).

## <u>Conclusion</u>

For those reasons, the Court should reverse the district court's order dismissing K.H.'s complaint and final judgment in Riti's favor.

Signature and certificate pages follow.

K.H. submits this brief on November 30, 2023.

**/s/ Naveen Ramachandrappa**

Matthew B. Stoddard
Ga. Bar No. 558215
Belle-Anne B. Cooper
Ga. Bar No. 561983
THE STODDARD FIRM
1534 N Decatur Road
Atlanta, GA 30307
Tel: 470-467-2200
Fax: 470-467-1300
*matt@legalhelpga.com*
*ba@legalhelpga.com*

Naveen Ramachandrappa
Ga. Bar No. 422036
BONDURANT, MIXSON &
ELMORE, LLP
1201 W Peachtree St NW
Ste 3900
Atlanta, GA 30309
Tel: 404-881-4100
Fax: 404-881-4111
*ramachandrappa@bmelaw.com*

*Attorneys for Appellant-Plaintiff K. H.*

## Certificate Of Compliance

This brief complies with the type-volume limitation of Fed. R. App. P. 32 (a)(7)(B) because this brief contains a total of 6,087/6,500 words, excluding the parts of the brief exempted by Fed. R. App. P. 32 (f) and 11th Cir. R. 32-4.

This brief also complies with the typeface requirements of Fed. R. App. P. 32 (a)(5) and the type style requirements of Fed. R. App. P. 32 (a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word with size 14 Times New Roman font.

This certification is made on November 30, 2023.

**/s/ Naveen Ramachandrappa**

## Certificate Of Service

I certify that, on November 30, 2023, I filed **Appellant-Plaintiff K.H.'s Reply Brief** with the Clerk of Court using the CM/ECF system, which will serve this document on the following counsel of record:

Kori Wagner
Tracy A. Gilmore
Marissa H. Merrill
SWIFT, CURRIE, MCGHEE, HIERS, LLP
1420 Peachtree Street NE, Ste 800
Atlanta, GA 30309
Tel: 404-874-8800
Fax: 404-888-6199
*kori.wagner@swiftcurrie.com*
*tracy.gilmore@swiftcurrie.com*
*marissa.merrill@swiftcurrie.com*

Laurie Webb Daniel
Skyler McDonald
WEBB DANIEL FRIEDLANDER LLP
75 14th St NE, Ste 2450
Tel: 404-433-6430
*laurie.daniel@webbdaniel.law*
*skyler.mcdonald@webbdaniel.law*

**/s/ Naveen Ramachandrappa**